[No. B196695. Second Dist., Div. Two. Mar. 7, 2008.]

STEPHEN J. LYONS, Plaintiff and Appellant, v.
FIRE INSURANCE EXCHANGE, Defendant and Respondent.

882

## Counsel

Knapp, Petersen & Clarke, Gwen Freeman and André E. Jardini for Plaintiff and Appellant.

Tharpe & Howell, Timothy D. Lake, Harry A. Enfijian; Greines, Martin, Stein & Richland and Robert A. Olson for Defendant and Respondent.

## Opinion

**BOREN, P. J.**—Plaintiff Stephen J. Lyons, a former professional baseball player later employed as a sportscaster for Fox TV and the Los Angeles Dodgers, met Stacey Roy while they were both vacationing with their families at a hotel in Hawaii. Following an afternoon of poolside conversation, Lyons followed Roy in the elevator to the floor of her hotel room and

took her by the wrist to a hallway alcove, where he asked her to expose her breasts. She declined to do so. Roy later complained of an ensuing sexual attack, which Lyons denied.

Roy sued Lyons for claims relating to the alleged sexual attack, including a cause of action for false imprisonment. Lyons tendered the defense of the action to defendant Fire Insurance Exchange (Fire Insurance), which denied any coverage under his homeowners policy because the facts did not meet the necessary prerequisite of damages caused by an accident. Lyons settled Roy's underlying claim, and then sued Fire Insurance for breach of contract and the bad faith failure to defend him in Roy's action. The trial court granted summary judgment in favor of Fire Insurance, and we affirm.

## FACTUAL AND PROCEDURAL SUMMARY

On March 10, 2002, Lyons and Roy were both guests at the Westin Maui hotel in Hawaii. They met at the hotel pool, where they chatted for several hours. Lyons claimed that Roy made several references to her large breasts, and to "how everybody loves to see them. And . . . '[i]f you are a good boy, maybe you will.' " When Roy left the pool area to return to her room, Lyons accompanied her.

After they both got off the elevator on the sixth floor, Lyons asked Roy to show him her breasts. According to Lyons, Roy said she was afraid of being observed in the hall. Lyons took her by the wrist and led her to an alcove near the elevator, where he repeated his request, stating, "[Y]ou know, you've been wanting to do this all day . . . so let's just move over here." Roy declined because of concern that her husband might come by. According to Lyons, he then walked Roy to the door of her room and returned to the pool area. He denied any physical contact with Roy, other than having held her wrist when outside the elevator.

Roy had a different version of the events. According to her, Lyons sexually attacked her in the alcove, shoved her against a vending machine, partially removed her clothes, exposed himself, and tried to force her to perform a sexual act. Roy reported the alleged assault to hotel security and the local police, both of which investigated the matter. Because of significant inconsistencies in Roy's story (such as initially claiming the incident occurred at the swimming pool), the lack of any observable injuries to her, and hotel guests who saw Roy flaunting her body while she was at the pool, the investigating police detective determined that "the entire episode was nothing more than a scam on Roy's part to gain money." No criminal charges were filed.

In March of 2003, Roy sued Lyons alleging causes of action for assault, battery, and false imprisonment and seeking damages for bodily injury and

emotional distress. Lyons tendered the defense of the action to his homeowners insurer, Fire Insurance. Fire Insurance denied coverage on the ground that the allegations in Roy's complaint did not meet the fundamental requirement for potential coverage under its policy because none of the damages were caused by an accident.

Lyons initially retained his own defense counsel, but ultimately another insurer, to which the defense had also been tendered, began to provide a defense under a reservation of rights. On the eve of trial, Lyons, Roy, and the other insurance carrier negotiated a settlement. As part of the settlement, Roy and Lyons agreed to entry of a stipulated judgment in the amount of $975,000, which provided in part that the settlement agreement did not constitute an admission by any of the parties of the truth of any of the released claims.

Of the $975,000 obligation under the settlement, Lyons paid $175,000. The other insurance carrier paid $50,000. Roy then sued Fire Insurance for the remainder (as a judgment creditor pursuant to Ins. Code, § 11580), and Fire Insurance settled that case with an indemnity payment to Roy of $100,000.

In October of 2005, Lyons filed the present action against Fire Insurance, alleging causes of action for breach of contract and tortious breach of the covenant of good faith and fair dealing. Fire Insurance moved for summary judgment on the ground that it owed no duty to defend or indemnify Lyons because his alleged acts were not accidental, but rather were intentional and thus did not fall within the policy provisions. Absent a duty to defend or indemnify, Fire Insurance maintained it could not have committed insurance bad faith.

Fire Insurance moved in the alternative for summary adjudication of (1) the cause of action for tortious breach of the covenant of good faith and fair dealing and (2) the claim for damages. Regarding the bad faith claim, Fire Insurance urged that it acted reasonably in denying coverage and that at all times there was a genuine dispute as to whether it owed Lyons a duty to defend or indemnify. As to the punitive damages claim, Fire Insurance argued that Lyons had not provided clear and convincing evidence that Fire Insurance had acted with the requisite malice, fraud, or oppression in responding to his claim.

Lyons countered with his own motion for summary adjudication. He urged that Fire Insurance owed a duty to defend because the policy potentially covered Roy's cause of action for false imprisonment.

The trial court granted summary judgment in favor of Fire Insurance and denied the motion by Lyons for summary adjudication. The court found, in

pertinent part, that there was "no possibility of coverage for the grabbing and pulling of Roy's wrist to take her to the alcove in the hallway of the hotel" because "grabbing a person's wrist is not an accident." Also, grabbing Roy's wrist was "an intentional act," even if done under a "mistaken belief" by Lyons that he had a right to do so, and thus the conduct is excluded from coverage.

## DISCUSSION

I. *There was no possibility of coverage for Lyons's intended act of false imprisonment because it was not an accident.*

A. *General legal principles.*

█ The potential for coverage creates the insurer's duty to defend. The insurer "must defend a suit which *potentially* seeks damages within the coverage of the policy." (*Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275 [54 Cal.Rptr. 104, 419 P.2d 168].) Thus, the insurer is excused from its defense obligation only when " 'the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage.*' " (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) "[T]he insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.*" (*Ibid.*)

"Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792].) And, even a single claim that does not predominate, but for which there is potential coverage, will trigger the insurer's duty to defend. (*Id.* at p. 1084; *Buss v. Superior Court* (1997) 16 Cal.4th 35, 48 [65 Cal.Rptr.2d 366, 939 P.2d 766].)

Moreover, the insurer "has a duty to defend when the policy is ambiguous and the insured would reasonably expect the insurer to defend . . . against the suit based on the nature and kind of risk covered by the policy." (*Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 869 [77 Cal.Rptr.2d 107, 959 P.2d 265].) On the other hand, where there is no ambiguity or uncertainty in the coverage provisions, the insured cannot reasonably expect a defense. (*Uhrich v. State Farm Fire & Casualty Co.* (2003) 109 Cal.App.4th 598, 622 [135 Cal.Rptr.2d 131].) An insured cannot reasonably expect a defense of claims that are based on risks clearly not covered or conspicuously excluded under the policy. (*B & E Convalescent Center v. State Compensation Ins. Fund* (1992) 8 Cal.App.4th 78, 99–100 [9 Cal.Rptr.2d 894].)

B. *The "accident" limitation provision in the Fire Insurance policy.*

The homeowners policy at issue here contained an "accident" limitation. The policy, in pertinent part, provided liability coverage for "bodily injury, property damage or *personal injury resulting from an occurrence* to which this coverage applies" (italics added), and defined personal injury as including "false arrest, imprisonment . . . and detention."

The policy specifically defined and limited an "occurrence" to "*an accident* including exposure to conditions which results during the policy period in bodily injury or property damage. . . . Occurrence does not include accidents or events which take place during the policy period which do not result in bodily injury or property damage until after the policy period." (Italics added.)

C. *The policy's "accident" limitation applies to the personal injury torts enumerated in the policy.*

Lyons mistakenly asserts that the "accident" limitation does not apply to personal injury coverage and thus does not apply to the false imprisonment claim. According to Lyons, an "occurrence" is defined as an accident only for the purposes of the bodily injury and property damage coverage, and not for the purposes of personal injury coverage. Lyons points out that although the policy states that as to all three types of coverage (bodily injury, property damage, and personal injury) an injury must "result[] from an occurrence," the definition of "occurrence" speaks only in terms of "an accident . . . which results during the policy period in bodily injury or property damage." Thus, Lyons seeks to restrict the application of the "occurrence" definition to bodily injury and property damage coverage, and by implication to make the definition inapplicable to personal injury coverage. However, his attempt to construe the "occurrence" definition as inapplicable to personal injury coverage would result in inappropriately reading the words "resulting from an occurrence" out of the phrase "personal injury resulting from an occurrence."

█ This we cannot do, as it would remove a necessary element of the policy's basic coverage grant, and thus result in improperly rewriting the clear language of the contract. (See *Apra v. Aureguy* (1961) 55 Cal.2d 827, 830–831 [13 Cal.Rptr. 177, 361 P.2d 897]; *Moss Dev. Co. v. Geary* (1974) 41 Cal.App.3d 1, 9 [115 Cal.Rptr. 736].) Also, such a reading would be contrary to the rule that all words in a contract are to be given meaning (see Civ. Code, § 1641), with the language in the contract "interpreted as a whole." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370,

900 P.2d 619].) We must construe the policy language " 'in context' [citation], and give effect 'to every part' of the policy with 'each clause helping to interpret the other.' " (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115 [90 Cal.Rptr.2d 647, 988 P.2d 568].)

The policy unambiguously defines "occurrence" as an "accident" and applies to all coverages—bodily injury, property damage, and personal injury. The clause that Lyons focuses upon—"which results during the policy period in bodily injury or property damage"—merely imposes an additional temporal limitation on bodily injury and property damage, to the effect that any resulting injuries must occur within the policy period. By contrast, although the personal injury coverage is also limited to accidents, it has no temporal limitation. Rather, the specified personal injury torts are covered so long as they involve accidents committed *during* the policy period, regardless of whether the injury occurred during or after the policy period. Indeed, this is a timing distinction that is well recognized in insurance policies. (See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2006) ¶¶ 7:1007, 7:1007.1, p. 7C-5 (rev. #1, 2006).)

Accordingly, construing the policy language in its context and viewing the instrument as a whole (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545]), an "occurrence" is defined as an "accident" and modifies and applies to all three coverages (bodily injury, property damage, and personal injury), which are noted in the same phrase of the policy. Hence, the policy's "accident" limitation applies to the personal injury torts enumerated in the policy, and the act of false imprisonment would only be covered to the extent it was an accident, which it was not.

D. *The false imprisonment of Roy was not an accident.*

██   Under any view of the underlying events, the false imprisonment was not an accident. "An 'accident' requires unintentional acts or conduct." (*ACS Systems, Inc. v. St. Paul Fire & Marine Ins. Co.* (2007) 147 Cal.App.4th 137, 155 [53 Cal.Rptr.3d 786] [sending spam faxes not an accident].) "Accidental" means " 'arising from extrinsic causes[;] occurring unexpectedly or by chance[; or] happening without intent or through carelessness.' " (*St. Paul Fire & Marine Ins. Co. v. Superior Court* (1984) 161 Cal.App.3d 1199, 1202 [208 Cal.Rptr. 5].) An accident occurs when the event leading to the injury was "unintended by the insured and a matter of fortuity." (*Merced Mutual Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41, 50 [261 Cal.Rptr. 273].)

■ Regarding the definition of false imprisonment, it is defined in the Penal Code as "the unlawful violation of the personal liberty of another." (Pen. Code, § 236.) The Penal Code definition applies in both civil and criminal actions. (*Parrott v. Bank of America* (1950) 97 Cal.App.2d 14, 22 [217 P.2d 89].) "The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." (*Easton v. Sutter Coast Hospital* (2000) 80 Cal.App.4th 485, 496 [95 Cal.Rptr.2d 316].) Although false imprisonment is an intentional tort because it entails an intentional act resulting in confinement, it can arise through negligence.

Two situations aptly illustrate negligent false imprisonment. In both situations the conduct resulting in confinement is intended, but the ultimate result is not because the actor is misinformed as to the objective facts. In the first example, a shopkeeper at closing time intentionally locks his storage vault but forgets he had sent an employee inside to take inventory. (See Rest.2d Torts, § 35, com. h., pp. 53–54.) In the second example, a store employee honestly but mistakenly detains a customer the employee believes is a shoplifter. Negligent wrongful detention could be found if the store employee detains the customer without reasonable cause. (See *Uhrich v. State Farm Fire & Casualty Co., supra*, 109 Cal.App.4th at p. 610.) Hence, even though conduct is intentional and results in the restraint and control of the movements of another person, false imprisonment can be in some circumstances accidental.

In the present case, although Lyons and Roy offer different versions of the events, their stories share key elements and establish that no covered accident occurred. Both agree that Lyons grabbed Roy's wrist in the context of his sexual advances, that she did not consent to his actions, and that his conduct restrained her. Both recount an intentional and deliberate course of conduct. In fact, Lyons admitted during his deposition that his conduct with Roy was intentional. Indeed, his alleged sexual advances, which lie at the heart of all the allegations in Roy's complaint, simply could not be an accident. (See *Northland Ins. Co. v. Briones* (2000) 81 Cal.App.4th 796, 811 [97 Cal.Rptr.2d 127] [sexual conduct and harassment are not an accident]; *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.* (1993) 14 Cal.App.4th 1595, 1610 [18 Cal.Rptr.2d 692] [sexual harassment is not an accident].)

Nonetheless, Lyons relies on the notion that the situation could potentially be construed as an accident if he had acted under the mistaken belief that Roy might not have rebuffed his advances. Such a theory is similar to one properly rejected in *Quan v. Truck Ins. Exchange* (1998) 67 Cal.App.4th 583 [79 Cal.Rptr.2d 134] (*Quan*), where the insured argued that he misunderstood and mistook his victim's consent. As the court in *Quan* explained: "To avoid

the consequences of the conclusion that no 'accident' has been alleged, the insured argues he might be found merely 'negligent,' or may be found to have mistakenly believed the claimant had 'consented.' Attempting to draw a distinction between the intentional tort causes of action and the 'negligence-based' causes of action, the insured argues that there will be covered liability if he is found to have been 'negligent' in serving alcohol to, touching, kissing, embracing, fondling or having sex with the claimant. Such arguments misconstrue the 'accident' requirement in standard general liability policies." (*Id.* at p. 596.)

" 'Under California law, the term ["accident"] refers to *the nature of the insured's conduct, not his state of mind.*' [Citation.] 'Negligent' or not, in this case the insured's conduct alleged to have given rise to claimant's injuries is necessarily nonaccidental, not because any 'harm' was intended, but simply because the conduct could not be engaged in by 'accident.' " (*Quan, supra*, 67 Cal.App.4th at p. 596.) Thus, mistaken consent does not, as a matter of law, create an accident. (See also *Merced Mutual Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41, 50–51 [261 Cal.Rptr. 273].)

The situation discussed in *Quan* and the similar theory posited by Lyons are in contrast to, for example, the negligent false imprisonment scenario previously noted where a shopkeeper negligently locks an employee in a vault at closing time. The hypothetical shopkeeper's deliberate conduct is indeed an accident because, to paraphrase the court in *St. Paul Fire & Marine Ins. Co. v. Superior Court, supra*, 161 Cal.App.3d at page 1202, it potentially arises from extrinsic causes, such as the employee's unexpected or chance distraction, or the carelessness of the shopkeeper. So, too, the wrongful detention of a suspected shoplifter without reasonable cause typically arises from an employee's careless assessment of objective facts. The above scenarios all involve mistakes as to objective facts.

Here, however, Lyons asserts merely his mistaken subjective belief about another person's consent. The best that can be said by Lyons is that he labored under the misimpression that Roy would not rebuff his advances and would consent to his overtures. However, his mental miscalculation of her state of mind simply cannot transform his intentional conduct, done with full knowledge of all the objective facts, into an accident. Regardless of his misperception of consent, Lyons intended his sexual advance and the accompanying unwanted detention that was the subject of Roy's claim. Hence, there was no "accident" within the scope of the policy's coverage for personal injury.

 E. *Because there was no potential for coverage, Fire Insurance owed Lyons no duty to defend.*

■ It is well settled that "where the extrinsic facts [such as those admitted by Lyons] eliminate the potential for coverage, the insurer may decline to defend even when the bare allegations in the complaint suggest potential liability." (*Waller v. Truck Ins. Exchange, Inc., supra*, 11 Cal.4th at p. 19.) Here, the intentional conduct by Lyons arose from a single incident (cf. *Horace Mann Ins. Co. v. Barbara B., supra*, 4 Cal.4th at pp. 1086–1087), and Lyons did not cause Roy's personal injuries as a result of an "accident" within the meaning of the policy. Because there was no potential for coverage, there was no duty to defend.

Accordingly, the trial court properly granted summary judgment in favor of Fire Insurance and denied the motion by Lyons for summary adjudication.

## II. *Other issues.*

Fire Insurance asserts several other grounds for denying coverage to Lyons. However, since there was no "accident" and hence no policy coverage and no duty to defend, it is unnecessary to discuss the policy's independent exemption of coverage for injuries caused by intentional conduct,[1] or to discuss whether a reasonable policy interpretation exists and thus precludes as a matter of law any liability for Fire Insurance's refusal to defend. (See *Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 951 [43 Cal.Rptr.3d 468]; *Morris v. Paul Revere Life Ins. Co.* (2003) 109 Cal.App.4th 966, 977 [135 Cal.Rptr.2d 718].)

---

[1] The policy also contained an intentional act exclusion. As stated in the policy, it specifically "do[es] not cover bodily injury, property damage, or personal injury which . . . is either [¶] caused intentionally by or at the direction of an insured; or [¶] results from any occurrence caused by an intentional act of any insured where the results are reasonably foreseeable."

Arguably, Fire Insurance waived reliance on this exclusion. (See *Chase v. Blue Cross of California* (1996) 42 Cal.App.4th 1142, 1151 [50 Cal.Rptr.2d 178].) The facts herein reveal that Fire Insurance's claim handler specifically eschewed denial of coverage on the basis of the intentional acts exclusion, and relied instead on the policy definition of an "occurrence" as an "accident."

## DISPOSITION

The judgment is affirmed.

Ashmann-Gerst, J., and Chavez, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 16, 2008, S163313.