**Jeffrey WHITE, Plaintiffs,**

v.

**CITY OF LAGUNA BEACH, et al., Defendants.**

**Case No.: SACV 08–1109 JVS (RNBx).**

United States District Court, C.D. California.

Jan. 12, 2010.

---

Allison Kristine Aranda, Life Legal Defense Foundation, Temecula, CA, Michael Millen, Michael Millen Law Offices, Los Gatos, CA, for Plaintiff.

Jennifer J. Farrell, Mark Jason Austin, Philip D. Kohn Esq., Robert S. Bower, Rutan and Tucker LLP, Costa Mesa, CA, for Defendants.

## ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT

JAMES V. SELNA, District Judge.

Plaintiff Jeffrey White ("White") moves for summary judgment pursuant to Feder-

al Rule of Civil Procedure 56. Defendants City of Laguna Beach, City of Laguna Beach Police Department, and Officer A. Peck (collectively, "Defendants") cross-move for summary judgment.

## I. *Background*

The basic factual details in this case are undisputed. Mr. White is the founder and president of an organization called Survivors of the Abortion Holocaust ("Survivors")(White Depo. 132:5–10, 133:8–9.) Around fifty members of the Survivors, including Mr. White, participated in a demonstration at Main Beach Park in Laguna Beach, California on Saturday, July 7, 2007 at approximately 3:30 pm. (*Id.* 197:3–6; Nov. 20 Peck Decl. ¶¶ 3–4.) This date was in the middle of the Fourth of July weekend.[1] The demonstrators, including Mr. White, stood on the sidewalk and held signs that measured approximately four-feet wide by five-feet tall at an angle that was perpendicular to the street. (Nov. 20 Peck Decl. ¶ 4; Complaint ¶¶ 2, 14.) Officer Peck approached some of the individual demonstrators and was directed to speak with White, who was overseeing the demonstration. (Nov. 20 Peck Decl. ¶ 7.) Officer Peck, along with two other officers, then approached White to discuss the blocking of the sidewalk. (*Id.* ¶¶ 8–9; Defs.' Mot. Br., Ex. D.) Officer Peck suggested to White that the group move to a grassy area next to the sidewalk approximately three to five feet away from where they were currently standing alongside the street curb. (Nov. 20 Peck Decl. ¶ 9.)

White declined to cooperate with Officer Peck's suggestion. (*Id.* ¶ 11.) Officer Peck took White's driver's license and issued him a citation for violating Laguna Beach Municipal Code ("L.B.M.C.") section 10.10.060.[2] (White Depo. 261:24–25; Nov. 20 Peck Decl. ¶ 11.)

## II. *Legal Standard*

Summary judgment is appropriate only where the record, read in the light most favorable to the nonmoving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c): *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary adjudication, or partial summary judgment "upon all or any part of a claim," is appropriate where there is no genuine issue of material fact as to that portion of the claim. Fed.R.Civ.P. 56(a), (b); *see also Lies v. Farrell Lines, Inc.,* 641 F.2d 765, 769 n. 3 (9th Cir.1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . ." (internal quotation marks omitted)).

Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all

1. In 2007, the Fourth of July fell on a Wednesday. The incident involving White occurred on the following Saturday, July 7, 2007.

2. L.B.M.C. section 10.10.060 provides, in relevant part, that "[n]o person shall remain standing in a stationary position upon any sidewalk, boardwalk or other public thoroughfare so as to obstruct free pedestrian traffic thereon after being requested by a

peace officer to move on." A. similar provision of the L.B.M.C, section 10.10.070(a), provides, in relevant part, that "[i]t is unlawful for any person to so conduct his business or occupation, or use his property, or engage in any act or activity, if such conduct, use, act or activity obstructs, either partially or totally, free passage of other persons or vehicles along public sidewalks or roadways within the city limits."

other facts immaterial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson. 477 U.S. at 248, 106 S.Ct. 2505. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation marks and citations omitted). In deciding a motion for summary judgment, "[t]he evidence of he nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), *aff'd,* 810 F.2d 898, 902 (9th Cir.1987).

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. If the moving party meets its burden, then the nonmoving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. *See id.* at 322–23, 106 S.Ct. 2548. If the nonmoving party meets this burden, then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.,* 210 F.3d 1099, 1103 (9th Cir.2000). Where the parties have made cross-motions for summary judgment, the Court must consider each motion on its own merits. *Fair Hous. Council of Riverside County, Inc. v. Riverside Two,* 249 F.3d 1132, 1136 (9th Cir. 2001). The Court will consider each party's evidentiary showing, regardless of which motion the evidence was tendered under. *See id.* at 1137.

### III. *Discussion*

White has brought claims under 42 U.S.C. § 1983 and California Civil Code section 52.1, alleging that Defendants violated his First Amendment and Fourth Amendment rights, as well as the analog rights under the California Constitution. White has also brought a false arrest/imprisonment claim. The Court considers each claim below.

### A. *First Amendment*

The parties dispute the nature of White's First Amendment claim. Defendants primarily characterize it as a claim that Officer Peck retaliated against White by citing him under L.B.M.C. section 10.10.060. White suggests that he is not bringing a retaliation claim at all: "This was not 'retaliation' but rather a direct violation of plaintiff's First Amendment activity." (Pl.'s Opp'n Br. 15.) White, however, goes on to argue that there is evidence of retaliation. (*Id.* 15–16.) White's Complaint does not clarify the matter. The Court interprets White's suggestion that Defendants' actions were a "direct violation" of the First Amendment to indicate that he is bringing either a facial or as-applied challenge to L.B.M.C. section 10.10.060. The Court will also address retaliation, despite White's contradictory stance.

### 1. *Retaliation*

■ "To demonstrate retaliation in violation of the First Amendment, [White] must ultimately prove first that [Officer Peck] took action that 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Skoog v. County of Clackamas,* 469 F.3d 1221, 1231–32 (9th Cir.2006) (quoting *Men-*

*docino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir.1999)). "The second requirement is [that] ... [White] must ultimately prove that [Officer Peck's] desire to cause the chilling effect was a but-for cause of [Officer Peck's] action." *Id.* at 1232. Defendants argue that White cannot establish a retaliation claim because there is no evidence that Officer Peck had a desire to chill White's First Amendment activities. The Court agrees.

██ Officer Peck's behavior at the scene of the demonstration does not indicate any intent to chill White's First Amendment activities. On the contrary, Officer Peck explained to those people complaining about the content of the Survivors' signs that the demonstrators had a First Amendment right to express their views, as long as they did so without blocking pedestrian traffic. (Nov. 20 Peck Decl. ¶ 6.) He also told White that he had no problem with the Survivors expressing their First Amendment rights and that he personally agreed with their anti-abortion views. (Defs.' Mot. Br., Ex. D.) Additionally, Officer Peck suggested to White that the demonstrators would be free to continue their First Amendment activities if they moved a few feet off the sidewalk to an area where they would not be blocking pedestrian traffic. (*Id.;* Nov. 20 Peck Decl. ¶ 9.) White has not presented any evidence that would suggest that Officer Peck was actually motivated by a desire to chill White's First Amendment activities when he issued the citation. Moreover, White admitted at his deposition that he did not know what motivated Officer Peck to issue the citation (White Depo. 296:11–19), and that he did not believe that Officer Peck issued the citation because he harbored any disagreement with White's message (*id.* 333:8–12).

The only evidence of retaliatory motive cited by White is a statement by Officer Peck's superior, Sergeant Calvert, who told White that police response would be slow because of the limited resources of Laguna Beach in the event violence was directed at the Survivors. (Supp. White Decl. ¶ 17.) White argues that this statement is evidence of a retaliatory motive: "Given that the police department was less than 2200 feet away from plaintiff's location, the threat strongly suggested that Calvert would cause the response to be slow because of his distaste for plaintiff's message." (Pl.'s Opp'n Br. 16.) This evidence does not show any motive on the part of Officer Peck, Sergeant Calvert is not a named Defendant in this case, and there is no claim that a slow response to violence against demonstrators was an official policy or custom of the municipal entity Defendants. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Additionally, the Court disagrees with White's assertion that Sergeant Calvert's statement strongly suggests that Calvert had a distaste for White's message. The statement just as strongly suggests that Sergeant Calvert was simply warning White that he believed the signs had a potential to incite violence and that the police department only had limited resources to respond in the event of such violence.

Furthermore, even if Sergeant Calvert's statements did provide evidence of a retaliatory motive, summary judgment would still be appropriate here because Officer Peck had probable cause to issue the citation (*see infra* Section B), and the evidence of retaliatory motive is weak. *See Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir.2008) (explaining that summary judgment is appropriate where there is "very strong evidence of probable cause and very weak evidence of a retaliatory motive" because if it was not "then nearly every retaliatory First Amendment claim would survive summary judgment").

## 2. Facial Challenge

■ In *Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 91, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965), the Supreme Court considered whether a municipal ordinance relating to standing on a sidewalk was facially invalid:

> On its face, the here relevant paragraph of s 1142 sets out two separate and disjunctive offenses. The paragraph makes it an offense to 'so stand, loiter or walk upon any street or sidewalk * * * as to obstruct free passage over, on or along said street or sidewalk.' The paragraph makes it 'also * * * unlawful for any person to stand or loiter upon any street or sidewalk * * * after having been requested by any police officer to move on.'

*Id.* at 90, 86 S.Ct. 211 (omissions in original). The Court expressed concern over the constitutionality of part of the ordinance if literally read: "[T]he second part of this ordinance says that a person may stand on a public sidewalk in Birmingham only at the whim of any police officer of that city. The constitutional vice of so broad a provision needs no demonstration." *Id.* Alabama courts, however, had narrowly constructed the ordinance so that it "applies only when a person who stands, loiters, or walks on a street or sidewalk so as to obstruct free passage refuses to obey a request by an officer to move on." *Id.* at 91, 86 S.Ct. 211. The Court concluded that this construction of the ordinance was not unconstitutional on its face: "As so construed, we cannot say that the ordinance is unconstitutional though it requires no great feat of imagination to envisage situations in which such an ordinance might be unconstitutionally applied." *Id.*

The narrow construction of the Alabama ordinance approved of by the Supreme Court in *Shuttlesworth* is effectively identical to L.B.M.C. section 10.10.060. *Compare id.* ("[The ordinance] applies only when a person who stands, loiters, or walks on a street or sidewalk so as to obstruct free passage refuses to obey a request by an officer to move on.") *with* L.B.M.C. § 10.10.060 ("No person shall remain standing in a stationary position upon any sidewalk, boardwalk or other public thoroughfare so as to obstruct free pedestrian traffic thereon after being requested by a peace officer to move on."). Furthermore, the Ninth Circuit has held on multiple occasions that similar ordinances are not facially unconstitutional. *See, e.g., Amster v. City of Tempe*, 248 F.3d 1198 (9th Cir.2001); *Roulette v. City of Seattle*, 97 F.3d 300 (9th Cir.1996). Accordingly, the Court follows both Supreme Court and Ninth Circuit precedent in holding that L.B.M.C. section 10.10.060 does not violate the First Amendment on its face.

## 3. As–Applied Challenge

■ In a traditional public forum such as a sidewalk, "the government may regulate the time, place, and manner of the expressive activity, so long as such restrictions are content neutral, are narrowly tailored to serve a significant governmental interest, and leave open ample alternatives for communication." *See Burson v. Freeman*, 504 U.S. 191, 197, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *United States v. Grace*, 461 U.S. 171, 177, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983)). L.B.M.C. section 10.10.060 is clearly content neutral and "promoting the free flow of traffic on public streets and sidewalks" has been recognized as a significant governmental interest. *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 768, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994); *see also Grace*, 461 U.S. at 182, 103 S.Ct. 1702; *One World One Family Now v. City and County of Honolulu*, 76 F.3d 1009, 1013 (9th Cir.1996) ("[T]he city's interest in maintaining the orderly movement of pe-

destrians on Waikiki's crowded sidewalks is also substantial.").[3] Thus, the only remaining issues are whether the ordinance is narrowly tailored and leaves White ample alternatives for communication.

 The Supreme Court has made clear that "a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so." *Ward,* 491 U.S. at 798, 109 S.Ct. 2746. "[T]he requirement of narrow tailoring is satisfied 'so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Id.* at 799, 109 S.Ct. 2746 (quoting *United States v. Albertini,* 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)). "Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id.* (citing *Frisby v. Schultz,* 487 U.S. 474, 485, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988)). "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Id.* at 800, 109 S.Ct. 2746.

 White argues that L.B.M.C. section 10.10.060 is not narrowly tailored as applied in this case because the Survivors demonstrators were not blocking the entire sidewalk. (Pl.'s Supp. Br. 2–3.) Thus,

according to White, enforcement of the ordinance against him resulted in too broad of a restriction and that such enforcement was not necessary to advance the government's goals. (*Id.*) In essence, White is arguing that it is unnecessary to prohibit partial blocking of a sidewalk in order to achieve its significant governmental interest in promoting the free flow of traffic.

The Court disagrees that the enforcement of L.B.M.C. section 10.10.060 was unnecessarily broad in this case or burdened more speech than necessary. This conclusion is supported by the Ninth Circuit's decision in *One World,* in which it held that an anti-peddling ordinance was narrowly tailored in part because "[a] proliferation of sidewalk vendors could also aggravate the congestion on already crowded sidewalks." *One World,* 76 F.3d at 1014. The enforcement of L.B.M.C. section 10.10.060 also did not burden more speech than necessary because the Survivors demonstrators would have been allowed to demonstrate on the grassy area next to the sidewalk without violating the ordinance. It was only the presence of the demonstrators on a sidewalk that was heavily congested during a holiday weekend that led to White's citation. Thus, it was only the "evil" of obstructing the sidewalk that was targeted by the enforcement of L.B.M.C. section 10.10.060. *Cf. Frisby,* 487 U.S. at 475, 108 S.Ct. 2495 ("[T]he ordinance is narrowly tailored to serve that governmental interest, since, although its ban is complete, it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy: offensive and

---

3. White's position with respect to whether there is a significant governmental interest in this case is confusing. White first states that he will "assume for purposes of this brief" that "preventing the obstruction of free pedestrian traffic" is a significant governmental interest. (*See* Pl.'s Supp. Br. 2.) In the next paragraph, under the guise of narrow tailor-

ing, White states that it is "not a recognized governmental interest" to ensure "no pedestrian will have to walk around anyone or anything." (*Id.*) Regardless of White's position, the Court finds that promoting the free flow of traffic on public sidewalks is a significant governmental interest.

disturbing picketing focused on a 'captive' home audience. It does not prohibit more generally directed means of public communication that may not be completely banned in residential areas."). Furthermore, the goal of promoting the free flow of traffic on the sidewalk would be achieved less effectively in the absence of the enforcement of L.B.M.C. section 10.10.060, as the demonstrators would have no disincentive from continuing to block the sidewalk and obstruct pedestrian traffic.

White's argument would be more persuasive if, at the time of the demonstration, the sidewalk was empty or only lightly trafficked. In such a situation, enforcement of L.B.M.C. section 10.10.060 might not be considered narrowly tailored to promote the free flow of traffic on the sidewalk. However, there is no genuine issue of material fact that the sidewalk that White and the Survivors demonstrators partially blocked was heavily congested on Saturday, July 7, 2007. Officer Peck has declared that, based upon his fourteen years of experience with the Laguna Beach Police Department, he has learned what areas and dates are busiest and most frequently visited by tourists to the city. (Dec. 30 Peck Decl. ¶ 2.) According to Officer Peck, the Fourth of July and the surrounding dates, including the Fourth of July weekend, are the busiest dates of the year in terms of tourist visits. (*Id.* ¶ 3.) Based upon his patrols that day, July 7, 2007 was "as busy as any other that [Officer Peck had] seen in terms of tourist visits" and "was likely only slightly less busy than the Fourth of July itself." (*Id.*) The demonstration occurred in the Main Beach area, which is extremely busy every Fourth of July and Fourth of July Weekend, including in 2007. (*Id.* ¶ 4.) Moreover, the intersection

where the demonstration occurred "is commonly known as the busiest intersection" in Laguna Beach "for both vehicular and pedestrian traffic."

One specific instance of the sidewalk being congested was documented in a photograph cited by both parties. (Pl.'s Opp'n Br. 7; Defs.' Reply Br. 2.) The photograph depicts a busy sidewalk, with approximately fifteen pedestrians closely grouped together. The Survivors demonstrators are seen standing at the edge of the sidewalk closest to the street, holding signs perpendicular to the street. The demonstrators occupy approximately 30–40% of the sidewalk. Officer Peck observed that some of the pedestrians in the photograph were obstructed and hindered by the demonstrators:

> In [the] photograph is a man carrying a cooler. Standing next to him are other individuals in his group (which I had understood to be part of the man's family), including small children, all of whom are carrying various items to the beach, including various bags and a second cooler. I specifically recall this group (which was walking together in a clump as opposed to marching in single file) was obstructed and hindered by a couple of Plaintiff's followers shown in the picture.... As a result of the large portion of the sidewalk being taken-up by Plaintiff's followers, the group was forced to stop for a short time to re-position themselves and their gear before they could move on.... [P]edestrian traffic became backed-up behind this group, causing others on the sidewalk to stop and/or divert their paths of travel.

(Dec. 13 Peck Decl. ¶ 5.) Officer Peck also states that "[a] number of other incidents like this occurred that day, including at the times and in the locations where Plaintiff himself was holding a sign." (*Id.* ¶ 6.) [4]

---

**4.** The record contains other photographs of the demonstration. (*See* White Depo., Exs. 2

In sum, enforcement of an ordinance that prohibits the blocking of a sidewalk, where the sidewalk is heavily congested, is narrowly tailored to achieve a significant governmental interest. As discussed above, there is no genuine issue that the sidewalk that White and the Survivors demonstrators were blocking was heavily congested. Therefore, the Court finds that L.B.M.C. section 10.10.060, as applied to White in this case, was narrowly tailored to achieve a significant governmental interest.

The final issue is whether the enforcement of L.B.M.C. section 10.10.060 left open ample alternative channels of communication. The Court finds that there is no genuine issue of material fact that ample alternative channels of communication were left open to White. Indeed, it is undisputed that White and the Survivors demonstrators would have been allowed to continue the exact same activity on a grassy area next to the sidewalk that they were standing on. Thus, all other channels of communication remained open, other than blocking the sidewalk in a location that was heavily congested so as to obstruct pedestrian traffic.

White argues that the enforcement of L.B.M.C. section 10.10.060 left him without ample alternative channels to communicate to people driving in cars, which he claims was one of his two intended audiences (the other being pedestrians). (Pl.'s Supp. Br. 4–5.) This is because, according to White, the Survivors demonstrators are unable to effectively display signs targeting both audiences unless they can stand on the sidewalk along the street curb. (*See* White

Decl. ¶ 7.) First, the Court is not convinced that White would be unable to communicate to both drivers and pedestrians while standing on the grassy area. If the signs were held perpendicular or at a forty-five degree angle to the street, they could be seen by both pedestrians and drivers. Second, even if White could no longer communicate to drivers, he fails to explain why people driving in cars are somehow a distinct intended audience for his message. It is for this reason that the analogy White draws between this case and *Bay Area Peace Navy v. United States*, 914 F.2d 1224 (9th Cir.1990), is misplaced. *Bay Area Peace Navy* involved an anti-war group that sought to communicate to an intended audience of 3,000 people specifically invited by the Navy to a parade. *Id.* at 1225–26. The Ninth Circuit agreed with the district court's conclusion that the anti-war group lacked ample alternative means of communicating with this distinct group of individuals. *Id.* at 1229.

■■■ Finally, as the Ninth Circuit recently explained, "the test is not whether another option would be more optimal for [the speaker]: '[courts] are cautioned against invalidating government regulations for failing to leave open ample alternative channels unless the regulations foreclosed an entire medium of public expression across the landscape of a particular community or setting.'" *Reed v. Town of Gilbert, Ariz.*, 587 F.3d 966, 980 (9th Cir.2009) (quoting *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1074 (9th Cir.2006)). Although obstructing a sidewalk may have been more optimal for White and the Survivors demonstrators,

& 4.) Although neither party has specifically referred to these photographs in their briefing, the Court notes that they depict varying levels of sidewalk congestion. Some pictures, including the one discussed above, show many other pedestrians on the sidewalk alongside the Survivors demonstrators. Other pictures show the Survivors demonstrators

alone on the sidewalk with few or no other pedestrians. However, the Court finds that the incident described by Officer Peck is sufficient to establish that the sidewalk was heavily congested at some point on July 7, 2007 and that the demonstrators' obstruction of the sidewalk impeded the free flow of pedestrian traffic.

the enforcement of L.B.M.C. section 10.10.060 in this case clearly did not foreclose an entire medium of public expression across the landscape of his section of Laguna Beach.

As Officer Peck did not violate White's First Amendment rights, the Court grants summary judgment for Defendants on White's first cause of action.[5]

**B.** *Fourth Amendment*

White argues that Officer Peck arrested him without probable cause when he gave him the citation for violating L.B.M.C. section 10.10.060. (Pl.'s Mot. Br. 8.) Defendants argue that not only did Officer Peck not arrest White, but that Officer Peck did not even seize White. (Defs.' Mot. Br. 11–12.) Defendants further argue that if White was seized or arrested, Officer Peck had reasonable suspicion or probable cause to do so. (*Id.* 14–15.)

"The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Enslin*, 327 F.3d 788, 795 (9th Cir.2003)

(quoting *United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)). "A seizure occurs when a law enforcement officer through coercion, 'physical force[,] or a show of authority, in some way restricts the liberty of a person.'" *United States v. Washington*, 387 F.3d 1060, 1068 (9th Cir.2004) (citing *United States v. Chan–Jimenez*, 125 F.3d 1324, 1325 (9th Cir.1997)). "A person's liberty is restrained when, 'taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Id.* (citing *Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)). "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Bostick*, 501 U.S. at 434, 111 S.Ct. 2382.

White argues that the issuance of the citation itself constituted an arrest. Numerous courts have held that the mere issuance of a citation does not even constitute a seizure, let alone a formal arrest.

---

**5.** The finding that White's First Amendment rights were not violated is fatal to any *Monell* claim against the municipal Defendants. *See Long v. County of Honolulu*, 511 F.3d 901, 907 (9th Cir.2007) ("If no constitutional violation occurred, the municipality cannot be held liable and whether 'the department regulations might have authorized [unconstitutional conduct] is quite beside the point.'" (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986))). At the hearing, White argued that he is entitled to an injunction preventing the enforcement of L.B.M.C. section 10.10.070. The Court declines to consider whether White is entitled to such an injunction for two reasons. First, White's Complaint does not reference L.B.M.C. section 10.10.070 and thus the constitutionality of that ordinance is not before the Court. Second, any claim with respect to Laguna Beach's enforcement of L.B.M.C. section 10.10.070 is not ripe. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d

1134, 1139 (9th Cir.2000) (en banc) ("We have held that neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement.... Rather, there must be a genuine threat of imminent prosecution.' ... In evaluating the genuineness of a claimed threat of prosecution, we look to whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute." (internal citations omitted)). White has not articulated a concrete plan to violate L.B.M.C. section 10.10.070, Laguna Beach has not communicated a specific warning or threat to initiate proceedings against White for violating L.B.M.C. section 10.10.070, and there is no evidence of past prosecution or enforcement of L.B.M.C. section 10.10.070.

*See, e.g., Karam v. City of Burbank,* 352 F.3d 1188, 1194 (9th Cir.2003); *Bielanski v. County of Kane,* 550 F.3d 632, 642 (7th Cir.2008); *Martinez v. Carr,* 479 F.3d 1292, 1299 (10th Cir.2007) ("[T]he issuance of a citation, even under threat of jail if not accepted, does not rise to the level of a Fourth Amendment seizure."); *Britton v. Maloney,* 196 F.3d 24, 28–31 (1st Cir. 1999); *DePiero v. City of Macedonia,* 180 F.3d 770, 789 (6th Cir.1999); *Deaton v. McElhaney,* No. EDCV 08–1396–SJO (RC), 2009 WL 2096012, at *4 (C.D.Cal. July 14, 2009); *Garber v. Heilman,* No. CV 08–3585–DDP (RNB), 2009 WL 409957, at *8–9 (C.D.Cal. Feb. 18, 2009) ("[I]ssuance of a citation for violating the Municipal Code does not amount to 'seizure' for purposes of stating a Fourth Amendment claim."). The Court agrees with the Tenth Circuit's observation that to hold that the issuance of a citation by a police officer is a seizure would have "a perverse, albeit unintended, side-effect" of discouraging "the use of [the] citation in lieu of arrest procedure" and also would potentially require Fourth Amendment scrutiny of routine traffic citations, subpoenas, and jury summonses. *Martinez.* 479 F.3d at 1296–97. The Court also agrees with the Seventh Circuit's similar conclusion: "No court has held that a summons alone constitutes a seizure, and we conclude that a summons alone does not equal a seizure for Fourth Amendment purposes. To hold otherwise would transform every traffic ticket and jury summons into a potential Section 1983 claim." *Bielanski,* 550 F.3d at 642.

White's reliance on *Easyriders Freedom F.I.G.H.T. v. Hannigan,* 92 F.3d 1486 (9th Cir.1996), is unavailing. In the course of evaluating the constitutionality of a California law requiring motorcyclists to wear helmets, the Ninth Circuit noted that "[u]nder California law, a traffic citation is considered an 'arrest' for which an officer must have probable cause." *Id.* at 1498 (citing Cal.Penal Code § 853.5; *People v. Parnell,* 16 Cal.App.4th 862, 875, 20 Cal. Rptr.2d 302 (Ct.App.1993)). Even if California law deems the issuance of a citation to be an "arrest," this does not mean that the issuance of a citation is an arrest for purposes of federal constitutional law. *See Virginia v. Moore,* 553 U.S. 164, 128 S.Ct. 1598, 1604–06, 170 L.Ed.2d 559 (2008) (explaining that state law does not alter the content of the Fourth Amendment). Moreover, the Court notes that there is nothing in *Easyriders* that suggests that the definition of "arrest" under California law is controlling for purposes of federal constitutional law. Furthermore, in *Martinez* the citation was issued pursuant to a New Mexico statute that appears to be substantively identical to the California statute cited in *Easyriders. See Martinez,* 479 F.3d at 1296–97. Despite a state law deeming the issuance of a citation to be an arrest, the *Martinez* court nonetheless concluded that the issuance of a citation was neither an arrest or seizure for purposes of the Fourth Amendment. For these reasons, the Court holds that the issuance of the citation by Officer Peck did not itself constitute a seizure or arrest.

White also appears to be arguing that he was seized and arrested not simply because he was issued a citation but also because of the process by which he was given the citation. (Pl.'s Opp'n Br. 11–12.) There is no evidence that any physical force was used by Officer Peck when the citation was written. For example, White was never placed in handcuffs or otherwise restrained. Officer Peck simply took lis driver's license for a short period of time [6]

---

**6.** Without a citation to the record, White states in his Opposition brief that it took three land a half minutes for Officer Peck "to take

[White's] driver's license, fill out the citation, direct him to sign, and then give him back his

in order to write the citation. However, given that there were three officers present when Office Peck wrote the citation, and that Officer Peck had possession of White's driver's license, there was arguably a show of authority that would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. Nonetheless, the Court does not agree with White that the act of a police officer taking a driver's license in order to write a citation constitutes an arrest. If this act was a seizure, it was akin to a *"Terry* stop" rather than a formal arrest. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This conclusion is supported by the Supreme Court's decision in *Knowles v. Iowa,* 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998). In *Knowles,* "[a]n Iowa police officer stopped petitioner Knowles for speeding, but issued him a citation rather than arresting him." *Id.* at 114, 119 S.Ct. 484. The Court concluded that the officer's subsequent full search of the car was not covered by the "search incident to arrest" exception. In reaching its decision, the Court distinguished between "a custodial arrest" and "[a] routine traffic stop [which] is a relatively brief encounter and 'is more analogous to a so-called *"Terry* stop" ... than to a formal arrest.'" *Id.* at 117, 119 S.Ct. 484 (quoting *Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)).

To lawfully conduct a *"Terry* stop," an officer only needs a "reasonable suspicion that criminal activity may be afoot." *United States v. Johnson,* 581 F.3d 994, 999 (9th Cir.2009) (quoting *Terry,* 392 U.S. at 30, 88 S.Ct. 1868). "Reasonable suspicion is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *Id.* (quoting *United States v. Thompson,* 282 F.3d 673, 678 (9th Cir. 2002)). "To determine whether reasonable suspicion existed, the court must consider the totality of the circumstances surrounding the stop." *Id.* (quoting *United States v. Hall,* 974 F.2d 1201, 1204 (9th Cir. 1992)).

The Court finds there is no genuine issue of material fact as to whether Officer Peck had a reasonable suspicion of criminal activity. Officer Peck received complaints from pedestrians and personally observed that the Survivors' signs were blocking the sidewalk. (Nov. 20 Peck Decl. ¶¶ 4–5.) He was directed by the demonstrators to talk to White, who was their leader. These unrebutted facts are sufficient to establish that Officer Peck had a reasonable suspicion that White was engaging in criminal activity, namely the blocking of or aiding and abetting the blocking of a sidewalk in violation of either L.B.M.C. section 10.10.060 or L.B.M.C. section 10.10.070.[7]

---

driver's license and a copy of the citation." (Pl.'s Opp'n Br. 5.)

7. Defendants correctly note that it is immaterial that White was cited under L.B.M.C. section 10.10.060 rather than L.B.M.C. section 10.10.070. *See Devenpeck v. Alford,* 543 U.S. 146, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). Additionally, while L.B.M.C. section 10.10.060 could perhaps be construed to only prohibit the blocking of an entire sidewalk, this is certainly not the case with L.B.M.C. section 10.10.070. *Compare* L.B.M.C. § 10.10.060 (prohibiting "standing ... so as

to obstruct free pedestrian traffic") *with* L.B.M.C. § 10.10.070 (prohibiting conduct that "obstructs, either partially or totally, free passage of other persons or vehicles along public sidewalks"). Moreover, White's contention that he cannot be held responsible for aiding and abetting the blocking of the sidewalk because there is no evidence that an officer requested the people blocking the sidewalk to "move on" fails because, unlike L.B.M.C. section 10.10.060, L.B.M.C. section 10.10.070 has 10 such "move on" requirement.

Furthermore, although only a reasonable suspicion was required because White was never arrested, the evidence discussed above is also sufficient to establish that Officer Peck had probable cause when he gave the citation to White. "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe:hat an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). Here, Officer Peck observed the blocking of the sidewalk and was told by demonstrators that White was their leader. This knowledge provided Officer Peck with probable cause to cite White for the blocking of or aiding and abetting in the blocking of a sidewalk in violation of either L.B.M.C. section 10.10.060 or L.B.M.C. section 10.10.070. Thus, the Court finds that there is no genuine issue of material fact that Officer Peck had probable cause when he gave White the citation.

In sum, Officer Peck did not violate White's Fourth Amendment rights and thus the Court grants summary judgment for Defendants on White's second cause of action.[8]

### C. *False Arrest/Imprisonment*

White's third cause of action is for false arrest and imprisonment. " '[F]alse arrest' and 'false imprisonment' are not separate torts. False arrest is but one way of committing a false imprisonment." *Asgari v. City of Los Angeles*, 15 Cal.4th 744, 752, 63 Cal.Rptr.2d 842, 937 P.2d 273 (1997). "The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Lyons v. Fire Ins. Exchange*, 161 Cal.App.4th 880, 888, 74 Cal. Rptr.3d 649 (Ct.App.2008) (quoting *Easton v. Sutter Coast Hosp.*, 80 Cal.App.4th 485, 496, 95 Cal.Rptr.2d 316 (Ct.App.2000)). Here, the "intentional confinement" element is lacking because White was never confined. As discussed above, White was never physically arrested and was merely given a citation by Officer Peck. Thus, White does not have a valid false arrest or false imprisonment claim. *See Johnson v. Barker*, 799 F.2d 1396, 1399 (9th Cir.1986) ("Appellants also claim that they were falsely arrested when Barker landed his helicopter, approached appellants, issued citations, and departed. This claim is meritless. Issuing a citation under these circumstances is simply not tantamount to an arrest.").

Accordingly, the Court grants summary judgment for Defendants on White's third cause of action.

### D. *Bane Act Claims*

White's final two causes of action are brought under California Civil Code section 52.1. This section provides a right of action to "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of [California] has been interfered with" by another person's "threats, intimidation, or coercion." Cal. Civ.Code § 52.1(a)-(b). The two claims are predicated on violations of the First Amendment and Fourth Amendment, as well as the corresponding provisions in the California Constitution. As discussed above, the Court finds that neither the First Amendment nor the Fourth Amendment have been violated in this case. Although

---

8. As discussed above, *see supra* note 5, the lack of a constitutional violation is fatal to any *Monell* claim against the municipal Defendants.

the corresponding rights under the California Constitution may be broader than those protected by the First and Fourth Amendments, the Court does not believe that this case presents a situation where the California Constitution provides broader protection than the United States Constitution. Moreover, White has not argued that the California Constitution provides broader protection than the United States Constitution in this factual situation.

Accordingly, the Court grants summary judgment for Defendants on White's fourth and fifth causes of action.

## IV. *Conclusion*

For the foregoing reasons, the Court GRANTS the Defendants' motion and DENIES White's motion.

IT IS SO ORDERED.