**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 27, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JERAMY MARTINEZ,

        Plaintiff-Appellee,

v.

THEODORE CARR, a public
employee with the New Mexico
Department of Public Safety,

        Defendant-Appellant.

No. 06-2069

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-04-01047 MV/RHS)**

Jerry A. Walz, Walz and Associates, Cedar Crest, New Mexico, for Defendant-Appellant.

Marcel Krzystek, Killmer & Lane, Denver Colorado, (Joseph P. Kennedy, Kennedy & Oliver, Albuquerque, New Mexico, on the brief) for Plaintiff-Appellee.

Before **BRISCOE, EBEL,** and **GORSUCH**, Circuit Judges.

**GORSUCH**, Circuit Judge.

Jeramy Martinez seeks damages from New Mexico State Police Officer

Theodore Carr pursuant to 42 U.S.C. § 1983, alleging that Officer Carr

unreasonably seized him in violation of the Fourth Amendment by issuing him a criminal citation and threatening jail if he declined to sign the citation. Before the district court, Officer Carr claimed qualified immunity and moved for summary judgment. The district court denied summary judgment, and Officer Carr now appeals to us. We conclude that the actions of Officer Carr did not constitute a seizure for purposes of the Fourth Amendment and, therefore, reverse the district court and remand with directions to enter judgment in favor of Officer Carr.

I

Viewing the facts in the light most favorable to Mr. Martinez, as we must, they reveal that on September 15, 2001, Mr. Martinez attended the New Mexico State Fair with friends and family. While there, Mr. Martinez saw various police officers, not including Officer Carr, walking in his direction and noticed one of the officers looking at him. Mr. Martinez asked an officer if there was a problem and a verbal exchange ensued. Ultimately, this exchange resulted in the officer threatening to ban Mr. Martinez from the fair as well as a physical altercation in which law enforcement officers "grabbed" and detained Mr. Martinez for several minutes. At some point during this encounter, Officer Carr, on patrol elsewhere at the fair, received a radio message calling him to the scene. When Officer Carr arrived, he noticed several fellow officers surrounding Mr. Martinez, including one who had Mr. Martinez's arm secured in a wrist lock behind his back.

Shortly after his arrival on the scene, Officer Carr followed Mr. Martinez and the other officers to "Station A," the central headquarters for law enforcement at the fairground. Prior to and during this trip, Officer Carr contends that he never had any physical contact with Mr. Martinez (something Mr. Martinez does not dispute). When the group arrived at the police station, Mr. Martinez was asked to take a seat, which he did. After a few minutes, Officer Carr issued Mr. Martinez a criminal misdemeanor citation for "resisting, evading or obstructing an officer," in violation of N.M. Stat. Ann. § 30-22-1. The factual basis recited in the citation alleged: "Subject told us what the f*** are the police doing here? Subject asked to leave – refused and escorted off the premises." In issuing the citation, Officer Carr told Mr. Martinez "he had two choices: sign the citation or go to jail." And, indeed, N.M. Stat. Ann. § 31-1-6 provides, in relevant part:

> A. A law enforcement officer who arrests a person without a warrant for a petty misdemeanor . . . may offer the person arrested the option of accepting a citation to appear in lieu of taking him to jail.
>
> B. . . . The law enforcement officer shall explain the person's rights not to sign a citation, the effect of not signing the citation, the effect of signing the citation and the effect of failing to appear at the time and place stated on the citation.
>
> *     *     *
>
> C. The person's signature on the citation constitutes a promise to appear at the time and place stated in the citation.

Although Mr. Martinez disputed the factual allegations recited in the citation, he signed the document and was escorted off the fairground by officers other than Officer Carr.

On August 10, 2004, Mr. Martinez filed a complaint against Officer Carr in New Mexico state court asserting wrongful arrest and false imprisonment, malicious use of process, and the violation of his Fourth Amendment right against being seized unreasonably. The case was later removed to the United States District Court for the District of New Mexico where the first two counts were dismissed by a stipulated order, leaving only the Fourth Amendment claim. On June 27, 2005, Officer Carr moved for summary judgment on several grounds, including qualified immunity. The district court denied this relief, concluding as a matter of law that, on the facts alleged, Officer Carr seized Mr. Martinez when he handed Mr. Martinez the citation and told him he had the choice to sign the citation or go to jail. The district court further found this seizure to be unlawful and ruled that Officer Carr was not entitled to qualified immunity from suit because his conduct violated a "clearly established" constitutional right under existing law. It is this determination that Officer Carr appeals to us.

II

A district court's denial of a defendant's summary judgment motion based on qualified immunity is an immediately appealable collateral order when, as here, the matter at issue concerns whether the alleged facts demonstrate a violation of clearly established law. *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 527-28 (1985)). We review *de novo* denials of summary judgment involving qualified immunity but, when a defendant raises qualified immunity as a defense, the plaintiff must meet a "heavy two-part burden." *Albright v. Rodriguez*, 51 F.3d 1531, 1534-35 (10th Cir. 1995).

First, the plaintiff must demonstrate that the defendant violated one of his or her constitutional or statutory rights. Second, the plaintiff must show that the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that a reasonable law enforcement officer would have known that his or her challenged conduct was illegal. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). In order for the law to be considered clearly established at the second step of the *Saucier* analysis, we have explained that "'there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Albright*, 51 F.3d at 1535 (quoting *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)). "In short, although we will review the evidence in the light most favorable to the nonmoving party, the

record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." *Gross*, 245 F.3d at 1156 (internal citation omitted).

In this case, we are able to resolve Mr. Martinez's claim at the first step of *Saucier* and thus need not reach the second. It is undisputed that law enforcement officers seized Mr. Martinez, but it is also undisputed that Officer Carr himself effectuated neither Mr. Martinez's initial detention and the subsequent wrist lock, nor Mr. Martinez's eventual trip to the police post. Indeed, it appears to us from the record of this case that Mr. Martinez may have intended to sue the officers responsible for these activities and mistakenly believed Officer Carr's participation to have been more substantial than it was. *See* App. at 77 (District Court Order at 4). As it happens, however, we have before us only Officer Carr, and it is elemental to our system of law that we generally avoid deciding the potential liability of those who are not parties before us with an opportunity to appear and be heard. *See, e.g.*, *In re Special Grand Jury 89-2*, 450 F.3d 1159, 1170 (10th Cir. 2006) ("'[W]hat makes [for] a proper judicial resolution of a 'case or controversy' rather than an advisory opinion[ ]is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff.'" (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)). We are therefore constrained to assess the strengths and weaknesses of Mr. Martinez's unlawful seizure claim based on Officer Carr's actions alone.

But what exactly are those actions? The parties agree that it was not Officer Carr who confronted Mr. Martinez, stopped him, seized his arm, "locked" his wrist behind his back, and forced him to the police station. During oral argument, Mr. Martinez clarified his view that Officer Carr remains responsible, and legally liable, for issuing a citation Mr. Martinez had to sign (and thereby promise to appear for trial at a later date) on threat of arrest if he declined to do so. Thus, this case presents the pure legal question whether the issuance of a misdemeanor citation requiring appearance at trial in lieu of arrest constitutes a "seizure" for Fourth Amendment purposes.

In approaching this question, and at the risk of stating the obvious, it seems of immediate significance to us that Officer Carr gave Mr. Martinez the *choice* of accepting the citation or being arrested – something very nearly the opposite of a *seizure*, which is commonly understood as circumstances when "'a reasonable person would have believed that he was not free to leave.'" *Jones v. Hunt*, 410 F.3d 1221, 1225-26 (10th Cir. 2005) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)). In fact, it seems that the issuance of the citation resulted in Mr. Martinez being *released* from the detention to which he previously had been subjected. After all, the upshot of the officer's actions was that the defendant was given the freedom to choose *not to be arrested* and instead leave without any

restrictions on his movement prior to trial.[1]  To be sure, the citation indicated that Mr. Martinez was subject to arrest if he failed to appear in court at the prescribed time and date, and such an arrest might well constitute a new and qualitatively different seizure, *see, e.g.*, *DePiero v. City of Macedonia*, 180 F.3d 770, 789 (6th Cir. 1999), but that is not our case and a question we need not face, as nothing of the sort took place here.

To us, Mr. Martinez's case appears something approaching the inverse of *Knowles v. Iowa*, 525 U.S. 113 (1998).  There, a police officer stopped a motorist, issued a traffic citation, and then conducted a full search of the car during which he found a bag of marijuana.  The defendant argued that the search was unlawful while the state contended that the search was something akin to a search incident to an arrest given the officer's issuance of a traffic citation pursuant to which, as here, the recipient promised by his signature to appear in court at a later date in return for foregoing an immediate trip to jail.[2]  The Supreme Court rejected the

---

[1]  Mr. Martinez's deposition testimony illustrates this very point – there, Mr. Martinez indicated that he decided to sign the citation not because of any police pressure but because he was accompanying his girlfriend's son, who was on his first trip alone with Mr. Martinez, and so he wanted to "get that situation over with as soon as possible."  App. at 20 (Dep. of Martinez at 13).

[2]  *Compare* Iowa Code Ann. § 805.1(1) ("[A] a peace officer having grounds to make an arrest may issue a citation in lieu of making an arrest without a warrant or, if a warrantless arrest has been made, a citation may be issued in lieu of continued custody."), *and* § 805.3 ("Before the cited person is released, the person shall sign the citation, . . . [which] signature shall also serve as a written promise to appear in court at the time and place specified."), *with* N.M.

(continued...)

state's argument that the issuance of a citation transformed a routine traffic stop into something of a significantly graver magnitude and held that, even after the issuance of a citation, "[a] routine traffic stop . . . is more analogous to a so-called '*Terry* stop' . . . than to a formal arrest." *Id.* at 117 (internal quotations omitted). *See also Illinois v. Caballes*, 543 U.S. 405, 414 (2005) ("There is no occasion to consider authority incident to arrest, however, for the police did nothing more than detain Caballes long enough to check his record and write a ticket." (internal citation omitted)). By parallel reasoning, the fact that Mr. Martinez could have been arrested does not convert the issuance of a citation into an arrest and neither does the fact that he had to sign the citation in order to avoid arrest. As in *Knowles*, Officer Carr did not qualitatively alter the nature of Mr. Martinez's preexisting detention simply by issuing a citation, even under threat of jail if the citation was not accepted.[3]

The result Mr. Martinez seeks might also create a perverse, albeit unintended, side-effect. The statute under which Officer Carr proceeded afforded

---

[2](...continued)
Stat. Ann. §§ 31-1-6(A), (C) ("A law enforcement officer who arrests a person without a warrant for a petty misdemeanor . . . may offer the person arrested the option of accepting a citation to appear in lieu of taking him to jail. . . . The person's signature on the citation constitutes a promise to appear at the time and place stated in the citation.").

[3] The specific question *Knowles* decided, whether and what authority officers should have to conduct a "search-incident-to-traffic-citation," remains the subject of some interest and discussion. *See* 3 Wayne R. LaFave, *Search & Seizure* § 5.2(h), at 125, *et seq.* (4th ed. 2004) (hereinafter "LaFave").

him the choice to effect an immediate arrest or issue a citation. *See* N.M. Stat. Ann. § 31-1-6(A) ("A law enforcement officer who arrests a person without a warrant for a petty misdemeanor . . . may offer the person arrested the option of accepting a citation to appear in lieu of taking him to jail."). The Supreme Court has instructed that, under such statutory rubrics, law enforcement officers are entitled to substantial discretion in choosing which alternative to pursue. *See generally Atwater v. City of Lago Vista*, 532 U.S. 318 (2001). Holding that both alternatives constitute "seizures" for Fourth Amendment purposes (and are, thus, subject to all the review and restrictions that flow from such a conclusion) would surely disincentivize the use of citations, at least to a certain degree,[4] a result inconsistent with the desire to mitigate intrusiveness on private citizens and recent efforts to encourage the use of citation in lieu of arrest procedure.[5]

---

[4] In a similar vein, Professor LaFave has argued that *Atwater* may incentivize arrests given the "odd[ity]" that "the search conducted in *Knowles* becomes permissible" if the officer merely uses his or her discretion to opt for an arrest rather issuing a citation and then performs a search incident to arrest. *See* LaFave § 5.1(i) at 91, *et seq.*

[5] *See*, *e.g.*, ABA Criminal Justice Section Standards §§ 10-1.3, 10-2.1; LaFave § 5.1(i) at 76 (discussing efforts to encourage the citation/summons alternative to arrest for minor crimes). The practice of employing citations in lieu of arrest is a relatively recent innovation aimed at ameliorating the common law tradition in which the ability to obtain pretrial release after arrest was far from certain. *See* Thomas K. Clancy, *What Constitutes An "Arrest" Within the Meaning of the Fourth Amendment?*, 48 Vill. L. Rev. 129 (2003); Donald B. Verrilli, Jr., Note, *The Eighth Amendment and the Right to Bail: Historical Perspectives*, 82 Colum. L. Rev. 328 (1982).

Indeed, if the issuance of a citation to Mr. Martinez did somehow constitute a new or qualitatively different seizure, it would follow that traffic citations, which function in many states in exactly the same way as the citation issued to Mr. Martinez, would also trigger Fourth Amendment seizure analysis. So might testimonial subpoenas that compel attendance at trial or deposition on penalty of potential jail time. *See* Fed. R. Civ. P. 45; Fed. R. Crim. P. 17. The practice of personal recognizance bonds, allowing individuals the choice to leave jail in return for a promise to appear in court at a fixed time and date without any further restrictions on their liberty, would also seem to be subject to Fourth Amendment scrutiny. We might even be forced to ask whether the practice of compelling citizens to appear for jury duty might constitute a "seizure."

We find it noteworthy that every court of appeals to address these related questions has rejected Fourth Amendment claims like Mr. Martinez's. In *DePiero*, 180 F.3d at 789, the Sixth Circuit concluded that the issuance of a traffic ticket requiring the defendant's appearance at trial does not constitute a "seizure," at least until such time as the recipient of the ticket fails to appear in court and a bench warrant is issued for his or her arrest. The Third Circuit, in *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005), similarly held that, with respect to a court order requiring plaintiffs to appear at pretrial proceedings and trial, "there could be no seizure significant enough to constitute a Fourth Amendment violation" because the plaintiffs "were only issued a

summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services. Their liberty was restricted only during the Municipal Court trials and the Fourth Amendment does not extend beyond the period of pretrial restrictions."

Likewise, the plaintiff in *Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003), was charged with a misdemeanor and, in lieu of jail, was allowed to sign a personal recognizance agreement pursuant to which she agreed to appear in court at the times and places ordered by the court and not to leave the state of California without first obtaining court permission; the Ninth Circuit held that these requirements were "no more burdensome than the promise to appear a motorist makes when issued a traffic citation" and did not constitute a Fourth Amendment seizure. Along the same lines, the First Circuit in *Britton v. Maloney*, 196 F.3d 24, 29-30 (1st Cir. 1999), reasoned that "*Terry* cannot be read to mean that the issuance of a summons (any more than a testimonial subpoena or a call to jury duty) would constitute a seizure simply because it threatens a citizen with the *possibility* of confinement if he fails to appear in court." *See also Technical Ordnance, Inc. v. United States*, 244 F.3d 641, 651 (8th Cir. 2001) ("This circuit has never held that pretrial restrictions such as [being forced to post bond, appear before court, and answer charges] constitute a Fourth Amendment seizure."); LaFave § 5.1(i) at 77 (the "[r]esort to the citation alternative is not in

and of itself an arrest or, for that matter, any variety of Fourth Amendment seizure.").[6]

By contrast, the authority to which we have been directed on the other side of the ledger does not squarely address the question we face here, but instead involves governmental conduct imposing qualitatively more significant deprivations of liberty than the issuance of a misdemeanor citation. Mr. Martinez points us to *Gallo v. City of Philadelphia*, 161 F.3d 217 (3d Cir. 1998). But the Third Circuit itself later distinguished *Gallo* in *DiBella*, discussed above, on the very ground that *Gallo* involved an arrest and release conditioned on significant pretrial restrictions while *DiBella* involved only (much as here) an order requiring attendance at future court proceedings. *See DiBella*, 407 F.3d at 603 ("If *Gallo* was a 'close question;' here [where plaintiffs were only issued a summons compelling attendance at court proceedings] there could be no seizure significant enough to constitute a Fourth Amendment violation . . . ."). Mr. Martinez also stresses *Rohman v. New York City Transit Authority (NYCTA)*, 215 F.3d 208 (2d Cir. 2000), but that case, too, involved an individual who was arrested and held

_____

[6] Relying on the First Circuit's decision in *Britton*, we have previously, in an unpublished decision, addressed the question whether the issuance of a summons, the functional equivalent of Officer Carr's citation in this case, constitutes a Fourth Amendment seizure; we concluded that it did not: "Because [plaintiffs] have not shown they sustained any other deprivations of liberty in connection with their receipt of the summonses, they have failed to show they were seized in violation of the Fourth Amendment." *Lewis v. Rock*, 48 Fed. Appx. 291, 294 (10th Cir. Oct. 3, 2002) (unpub.).

overnight before being released.  Finally, Mr. Martinez cites to *Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir. 1997), a case in which the plaintiff was incarcerated overnight and denied the right to travel outside the state without prior permission from the court.[7]  *See also Evans v. Ball*, 168 F.3d 856, 860-61 (5th Cir. 1999) (the plaintiff was fingerprinted and photographed and likewise forbidden from leaving the state without leave of court), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003).  Such circumstances again present significant additional restrictions on a defendant's liberty not present in our case and we thus see no necessary inconsistency between, on the one hand, our holding (and those of so many of our sister circuits) that the mere issuance of a citation requiring presence at future legal proceedings does not qualify as a constitutional "seizure" and, on the other hand, the results and reasoning in the cases cited to us by Mr. Martinez.

\* \* \*

We conclude that the issuance of a citation, even under threat of jail if not accepted, does not rise to the level of a Fourth Amendment seizure; accordingly, the judgment of the district court must be reversed and judgment in favor of Officer Carr is required.  *So ordered.*

---

[7]  The Second Circuit has emphasized that the question whether a mere pre-arraignment summons, without a contemporaneous deprivation of liberty, constitutes a Fourth Amendment seizure is not controlled by its prior precedents like *Murphy*.  *Dorman v. Castro*, 347 F.3d 409, 411 (2d Cir. 2003).