**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 23, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ZACHARY T. PAINTER,

      Plaintiff-Appellant,

v.

THE CITY OF ALBUQUERQUE;
OFFICER JOHN KELLY; OFFICER
CHARLES CROOKE; OFFICER
BRADLEY PERRY; OFFICER
DWIGHT PORLAS, in their individual
and official capacities as employees of
the City of Albuquerque,

      Defendants-Appellees.

No. 09-2135
(D.C. No. 1:07-CV-00395-MCA-ACT)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **McKAY**, and **CUDAHY**,[**] Circuit Judges.

After Zachary Painter was arrested for seeking to cash a fraudulent check,

he brought various claims against the arresting officers and others. At summary

judgment, the district court dismissed several of those claims, but ruled in favor

of Mr. Painter on others. Relevant for purposes of this particular appeal, the

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] Honorable Richard D. Cudahy, U.S. Senior Circuit Judge, Seventh Circuit, sitting by designation.

district court held that Officers John Kelly and Dwight Porlas were entitled to qualified immunity. Before us, Mr. Painter argues this ruling is in error. Our review of the uncontested facts and law, however, confirms the district court's assessment and so we affirm.

I

A

Reviewing the uncontested facts in light of the officers' motion for summary judgment, the district court explained them as follows. Mr. Painter visited a Wells Fargo Bank in Albuquerque, New Mexico on August 1, 2006. On arriving, Mr. Painter met with a customer service representative, Melanie Garcia. Mr. Painter handed her a cashier's check for $36,000.82, on which he was the named payee. He explained that he had obtained the check from someone who wanted to buy his car.

Ms. Garcia told Mr. Painter that she would have to consult with her manager before cashing the check. She also asked for Mr. Painter's identification, which he provided. As it happens, when Ms. Garcia and her supervisor, Kim Yake, called a check verification service, they learned that the cashier's check had been paid more than one year earlier. This discovery prompted Ms. Garcia to call the police and report that a bank customer was "trying to cash a fraudulent check that was cashed over a year ago." D. Ct. Op. at 3. Ms. Garcia also provided the operator with Mr. Painter's name and physical description.

Among those who responded to the call were Officers Kelly and Porlas.  On arriving, Officer Kelly proceeded to interview Ms. Garcia and Ms. Yake about the incident.  Ms. Garcia told him that Mr. Painter had handed her a cashier's check, stating that he had "sold his car and wanted to cash this check, or get cash back today."  App. at 150.  Ms. Garcia added that Mr. Painter also asked her "how much he would be able to get in cash" or "how soon [] the funds [would] be available."  App. at 150.  Ms. Garcia then described how Ms. Yake had verified three times that the check was fraudulent and had already been cashed.  App. at 150.  When interviewed, Ms. Yake confirmed to Officer Kelly that Ms. Garcia had given her a cashier's check for $36,000.82 issued to Mr. Painter, and that a check verification service had informed her that the check had been paid over a year earlier.  App. at 151.

Officer Kelly then interviewed Mr. Painter, who explained that he was in the process of selling his Ford Mustang for $28,000 through an Internet transaction.  He told Officer Kelly that he had been contacted by a potential buyer in Canada and, after several e-mail exchanges, the buyer had agreed to mail him a cashier's check for $36,000, $8,000 over the asking price.  Mr. Painter explained that, upon receipt of the funds, he was to wire the extra $8,000 back to the buyer to offset shipping and other costs.  App. at 159, 163.

Officer Kelly asked Mr. Painter for information about the purported buyer.  But Mr. Painter was unable to provide a name, or any details of the account to

which he was instructed to wire the $8,000. Mr. Painter offered to take the officers to his home to show them his e-mails with the buyer and other documents, but the officers declined. As part of their investigation, however, Officers Kelly and Porlas did verify that Mr. Painter's driver's license was valid and that there were no outstanding warrants against him. Officer Kelly also examined the fraudulent check and the envelope in which it had allegedly been sent. App. at 163-64. The address on the envelope matched the address listed on Mr. Painter's driver's license, and the envelope was postmarked and bore postage. App. at 174. In addition, Mr. Painter had not endorsed the cashier's check. App. at 174.

Following their investigation, Officers Kelly and Porlas conferred and concluded they had probable cause to arrest Mr. Painter for second degree felony fraud. After Mr. Painter was arrested and later released on his own recognizance, the fraud charge against him was dropped.

B

Then, Mr. Painter filed this action under 42 U.S.C. § 1983, claiming, among other things, that Officers Kelly and Porlas violated the Fourth Amendment by arresting him without probable cause. Before the district court, the parties moved for summary judgment, with Officers Kelly and Porlas arguing they were entitled to qualified immunity.

Ultimately, the district court ruled in favor of Mr. Painter on several claims, but dismissed his Fourth Amendment false arrest claim against Officers Porlas and

Kelly.  The court found that, in arresting Mr. Painter, Officers Kelly and Porlas had reasonably relied on the statements of Ms. Garcia and Ms. Yake, as well as the fact that Mr. Painter could not provide the officers with information on the purported buyer who had allegedly sent the fraudulent check.  These facts, the court concluded, were sufficient for a reasonable officer to believe he had probable cause to arrest Mr. Painter.  Given this, the court held that Officers Kelly and Porlas were entitled to qualified immunity and granted summary judgment in their favor.  Following entry of final judgment, Mr. Painter filed this appeal challenging that grant of qualified immunity.

## II

The parties do not dispute the facts set forth by the district court that govern our analysis.  Instead, Mr. Painter challenges only the district court's legal ruling that, in light of those facts, the officers were entitled to qualified immunity.

Where, as here, the defendants assert qualified immunity, the burden shifts to the plaintiff to clear two hurdles.  First, the plaintiff must show that the defendants violated the plaintiff's federal constitutional or statutory rights. *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007).  Second, the plaintiff must demonstrate that the infringed right was clearly established at the time of the defendants' allegedly unlawful conduct such that a reasonable law enforcement officer would have known that his challenged conduct was illegal. *Id.*  We review the district court's assessment of these legal questions *de novo. Id.* at 1294.

A

We begin with the first prong of the qualified immunity test by asking, in this case, whether Mr. Painter's arrest for fraud violated the Fourth Amendment. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). While "[t]he probable-cause standard is incapable of precise definition or quantification," *Maryland v. Pringle*, 540 U.S. 366, 371 (2003), the Supreme Court has told us that probable cause, as the very name implies, "requires only a probability or substantial chance of criminal activity," *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983).

Probable cause exists if, "at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (citations omitted). In other words, it is irrelevant to the probable cause analysis whether a person is later acquitted of the crime for which she or he was arrested. *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

In this case, Officers Kelly and Porlas arrested Mr. Painter for second degree felony fraud. Under New Mexico law, fraud consists of the "intentional misappropriation or taking of anything of value that belongs to another by means

of fraudulent conduct, practices or representations." N.M. Stat. Ann. § 30-16-6(A). And, "[w]hoever commits fraud when the value of the property misappropriated or taken exceeds twenty thousand dollars ($20,000) is guilty of a second degree felony." N.M. Stat. Ann. § 30-16-6(F). Notably, fraud in New Mexico is a specific intent crime — that is, the defendant must have intended to defraud the victim. *See State v. Green*, 861 P.2d 954, 958 (N.M. 1993). This is notable because, before us, Mr. Painter does not dispute that the officers had reason to believe his actions satisfied the conduct, or actus reus, requirement of the charged crime. Instead, he argues the officers lacked probable cause only because they had no reason to believe he possessed the requisite mental state, or mens rea.

With this, however, we cannot agree. The facts and circumstances known to Officers Porlas and Kelly were sufficient to give rise to a reasonable belief that Mr. Painter intended to defraud the bank. Officers Porlas and Kelly arrived at the bank in response to a call from Ms. Garcia reporting that a bank customer was "trying to cash a fraudulent check that was cashed over a year ago." D. Ct. Op. at 3. When Officer Kelly interviewed Ms. Garcia at the bank, she confirmed her prior report and understanding of events. And the interview with Ms. Yake suggested the same conclusion. Ms. Garcia also repeated to Officer Kelly Mr. Painter's express statement that he "wanted to cash this check, or get cash back today" and his question "how much he would be able to get in cash" and "how

soon [] the funds [would] be available." App. at 150. Surely reasonable officers are allowed to accord significant weight to the victims' understanding of unfolding events and their repetition of the defendant's stated intentions; in fact, much of the time this is enough all by itself to support probable cause. *See, e.g.*, *Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 10 (1st Cir. 2004) ("The uncorroborated testimony of a victim or other percipient witness, standing alone, ordinarily can support a finding of probable cause."); *United States v. Neff*, 300 F.3d 1217, 1221 (10th Cir. 2002) (noting presumptive reliability of citizen informants).

But still there's more. It is telling, too, that Mr. Painter was unable to provide certain information to corroborate his story. Mr. Painter claimed a buyer in Canada had mailed him the check. The check bore his name as payee. Yet, he could not provide Officer Kelly with the name of this alleged buyer. And when confronted with the fact that the check was for $8,000 more than the purchase price of the car, he told Officer Kelly that he was instructed to wire the extra $8,000 back to the buyer upon receipt of the cashier's check — but he could not provide any details of the account to which he was to remit the money. Mr. Painter's inability to supply basic facts in response to suspicious circumstances tended to call his intentions further into question. Indeed, courts often find similar circumstances to weigh heavily in the probable cause calculus. *See, e.g.*, *United States v. Maher*, 919 F.2d 1482, 1487 (10th Cir. 1990) (finding probable cause to believe defendant had stolen a trailer based in part on defendant's "inability . . . to

identify the trailer's previous owner"); *United States v. Jackson*, 240 F. App'x 88, 90 (6th Cir. 2007) (per curiam) (unpublished) (finding probable cause based in part on defendant's "inability to provide a plausible explanation for his activities").

Mr. Painter, of course, cites competing evidence of his intent. He notes, for example, that he presented the fraudulent check to a customer service representative, rather than a bank teller; that he had not endorsed the check at the time of his arrest; and that he had offered to take the officers to his home to obtain more information.[1] We don't disagree that these facts tend to suggest that Mr. Painter might have been more interested in ascertaining the validity of the check than in cashing it (and thus defrauding the bank). But these facts are not dispositive of what a reasonable officer could have concluded about Mr. Painter's intent. There are, after all, many reasons why Mr. Painter might have chosen to deal with a customer service representative that are consistent with an intent to defraud the bank — perhaps, for example, the wait for a customer service representative was shorter than for a teller, or perhaps he thought a teller could not cash so large a check. Similarly, while Mr. Painter would have us infer from his

---

[1] Mr. Painter refers as well to testimony indicating that Officer Kelly believed his explanation for how he obtained the fraudulent check and was unaware that, under New Mexico law, fraud requires proof that the defendant intended to defraud the victim. But in determining whether probable cause for arrest exists, the inquiry is objective, not subjective. *See Buck v. City of Albuquerque*, 549 F.3d 1269, 1282 (10th Cir. 2008).

failure to endorse the cashier's check that he was not seeking to cash the check, this inference is contradicted by Ms. Garcia's understanding of what had transpired. It is contradicted, too, by Mr. Painter's express statement to her, repeated to Officer Kelly, that he "wanted to . . . get cash back today." App. at 150.

At the end of the day, the hard fact confronting Mr. Painter is that probable cause "does not deal with hard certainties, but with probabilities." *Gates*, 462 U.S. at 231. "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972). And the facts known to the officers here, while not pointing uniformly in the same direction or metaphysically dispositive of Mr. Painter's intent, were sufficient for an objectively reasonable officer to think that Mr. Painter *probably* harbored the intent to cash a check he knew not to be valid.

This holding is not meant to suggest that there is always and everywhere probable cause for arrest when a person presents a fraudulent check to a bank official. We might have a different case, for example, if the bank employees told the officers that Mr. Painter only inquired about the validity of the cashier's check and disavowed an intent to cash it. But that case isn't ours and we express no views on its proper disposition. Rather, in *this* case, the officers knew that: (1) Mr. Painter had presented a check to a bank; (2) the check bore his name as payee;

(3) he wanted money back "today" from the bank; (4) the check had been cashed more than a year earlier; (5) bank officials thought they were the subject of an ongoing effort to pass a bad check; (6) Mr. Painter could not identify who had provided him with the check; (7) the check was for significantly more than the purchase price of the car; and (8) Mr. Painter could not supply any details about where he was supposed to wire the excess money. In these circumstances, and only in light of all of these circumstances taken collectively, we hold that a reasonable officer could have believed that Mr. Painter was probably intending to commit fraud, and therefore Mr. Painter's arrest did not violate the Fourth Amendment.

It is notable that in the related context of passing a counterfeit note (rather than a bad check), several of our sister circuits have found probable cause to arrest based on far less. In counterfeit note cases, "[a]ll of the . . . circuits to have answered th[e] question . . . have found that the passing of a counterfeit note coupled with an identification of the person who passed the note furnishes probable cause to arrest the individual identified as passing the note." *Rodis v. City & County of San Francisco*, 558 F.3d 964, 970 (9th Cir. 2009) (collecting cases) (internal brackets and quotation marks omitted). While the difference between notes and checks might or might not admit of some meaningful distinction (a question the parties haven't explored and we do not pass on today), it is not insignificant that this bad check case offers a great deal more evidence

probative of guilt than every circuit has found sufficient to warrant an arrest in the bad note context.[2]

B

Even if Officers Kelly and Porlas lacked probable cause to effect an arrest, Mr. Painter has not shown that they violated "clearly established" law when they did so, and thus the officers would still be entitled to qualified immunity on Mr. Painter's Fourth Amendment claim.

Before a law enforcement officer may be held liable in a § 1983 action, the Supreme Court requires a plaintiff to establish that "it would be *clear* to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (emphasis added), *overruled on other grounds by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). To satisfy this burden, we have held that a plaintiff must present "either a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts" must have found the law to be as the plaintiff maintains. *Brammer-Hoelter v. Twin Peaks Charter Academy*, No. 08-1325, 2010 WL 1575724, at *5

---

[2] Beyond contesting the district court's qualified immunity ruling on the Fourth Amendment false arrest claim, Mr. Painter also seeks to challenge the district court's grant of summary judgment to Officers Porlas and Kelly on his state law false arrest and imprisonment claims. Because we hold there was probable cause to arrest Mr. Painter, we affirm the district court's dismissal of these state law claims. *See Santillo v. N.M. Dep't of Pub. Safety*, 173 P.3d 6, 10 (N.M. Ct. App. 2007) (holding that "[a]n officer who has probable cause to arrest a person cannot be held liable for false arrest or imprisonment").

(10th Cir. Apr. 21, 2010) (internal quotation marks omitted); *Novitsky v. City of Aurora*, 491 F.3d 1244, 1255 (10th Cir. 2007) ("The plaintiff bears the burden of articulating clearly established law."). That is, a plaintiff must "demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Brammer-Hoelter*, 2010 WL 1575724, at *5 (internal quotation marks omitted).

This is not to say that Mr. Painter is required to cite a case dealing with an identical factual situation. But it is to say that he must identify legal authority that makes it "apparent" that a reasonable officer, confronted with the facts here, would have known that arresting Mr. Painter was unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Attempting to meet this burden, Mr. Painter, in his appellate brief, refers us to only a single case, *Olsen v. Layton Hills Mall*, 312 F.3d 1304 (10th Cir. 2002). Yet that case does not establish that, at the time of Mr. Painter's arrest, it would have been apparent to a reasonable officer that the facts known to Officers Kelly and Porlas fail to constitute probable cause for an arrest. In *Olsen*, the plaintiff brought suit claiming that a police officer had wrongfully arrested him when he attempted to purchase clothing with a credit card that had been classified as fraudulent. *Id.* at 1309-11. This court reversed the district court's grant of summary judgment for the officer on that claim, holding, unremarkably, that there were unresolved material factual disputes as to what actually occurred and at what

point the arrest took place. *Id.* at 1313. Nowhere in *Olsen* did this court hold that the police officer lacked probable cause to arrest the plaintiff. To the contrary, it held that the factual disputes in the case "render[ed] it impossible to make an initial determination as to whether [the officer] violated [the plaintiff's] constitutional right to be free from unreasonable seizure." *Id. Olsen*, then, simply could not have put Officers Kelly and Porlas on clear notice of the illegality of arresting Mr. Painter.

Perhaps for this reason, at oral argument Mr. Painter sought to point us to two additional cases, *United States v. DeGasso*, 369 F.3d 1139 (10th Cir. 2004), and *United States v. Tibbetts*, 396 F.3d 1132 (10th Cir. 2005). But these cases, too, fail to aid Mr. Painter's cause. Both *DeGasso* and *Tibbetts* dealt with challenges to traffic stops, not custodial arrests, and neither case dealt with an incident involving alleged fraud. We fail to see, and Mr. Painter does not explain, how these radically different cases could have made it "apparent" to reasonable officers in the shoes of Officers Kelly and Porlas that they lacked sufficient cause to effect an arrest in this case. *Hope*, 536 U.S. at 739.

Recognizing the absence of case law holding materially similar conduct unconstitutional, Mr. Painter, as a last resort, argues that the right to be free from arrest without probable cause is clearly established. And this broad legal principle, he claims, put Officers Kelly and Porlas on notice that their conduct in this case was illegal. There is no question that the Fourth Amendment's general

prohibition against arrests without probable cause is clearly established.  "But if the test of 'clearly established law' were to be applied at this level of generality, . . . [p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."  *Anderson*, 483 U.S. at 639.  Indeed, for this reason, the Supreme Court in *Saucier* rejected a lower court's holding that a right was clearly established based on the too-general proposition that "use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness."  533 U.S. at 202; *see also Anderson*, 483 U.S. at 641 ("It simply does not follow immediately from the conclusion that it was firmly established that warrantless searches not supported by probable cause and exigent circumstances violate the Fourth Amendment that [the defendant's] search was objectively legally unreasonable.").

Of course, the Supreme Court has told us that "a general constitutional rule already identified in the decisional law *may* apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful."  *United States v. Lanier*, 520 U.S. 259, 271 (1997) (emphasis added) (internal quotation marks and alterations omitted).  But the Court's own example of such a situation indicates this exception is a narrow one: the Court noted that although "[t]here has never been . . . a section 1983 case accusing welfare officials of selling foster children into slavery[,] it does not

follow that if such a case arose, the officials would be immune from damages." *Id.* (internal quotation marks omitted). The officers' conduct in this case surely does not so obviously run afoul of law that an assertion of qualified immunity may be overcome based solely on the Fourth Amendment's general prohibition against arrests without probable cause. We simply cannot say that the general proposition — that probable cause is required for an arrest — made it "apparent" that the facts known to Officers Kelly and Porlas did not justify arresting Mr. Painter. *Hope*, 536 U.S. at 739.

The judgment of the district court is affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge

**McKAY**, concurring in part and dissenting in part.

I respectfully dissent from the majority's conclusion that Mr. Painter's arrest was supported by probable cause. Under the totality of the circumstances in this case, I am not persuaded the facts and circumstances known to the officers were sufficient to warrant a prudent man in believing an offense had been or was being committed. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964).

"Where an officer observes inherently innocuous behavior that has plausible innocent explanations, it takes more than speculation or mere possibility to give rise to probable cause to arrest." *Sherouse v. Ratchner*, 573 F.3d 1055, 1062 (10th Cir. 2009). The majority relies on the bank officials' report to the officers that Mr. Painter had presented a check bearing his name as payee and inquired about obtaining cash back and the availability of funds. However, these actions strike me as inherently innocuous actions from which no criminal intent can be inferred. There are many reasons why an innocent customer presenting a check at a bank might wish to obtain cash back immediately and to know when all of the deposited funds will be available for his use, and I am not persuaded criminal intent can be inferred in any way from Mr. Painter's simple inquiry regarding cash and the availability of funds.[1]

---

[1] Because a bank is required by federal law to disclose its general policy regarding the availability of funds and any exceptions that it may apply on a case-by-case basis, *see* 12 U.S.C. § 4004(d); 12 C.F.R. § 229.16, it seems likely many bank customers will be aware generally that deposited funds may not be immediately available, but such customers may still desire more specific information from bank employees as to a particular deposit.

Nor am I persuaded the officers could infer intent to defraud from the information provided by the bank officials regarding the check's fraudulent nature. Nothing in the bank officials' report to the officers and the officers' own investigation gave any indications that Mr. Painter was even aware the check was fraudulent. The majority opinion relies on the officers' testimony that Mr. Painter could not provide corroborating information such as the identity of the person who provided him with the check or details regarding where he was supposed to wire the excess money. However, the officers also testified that Mr. Painter was answering their questions to the best of his ability and gave no indications that he was concocting a story or being deliberately evasive. Although this is a close case, I would conclude that a reasonable officer could not infer criminal intent simply because Mr. Painter was unable to generate corroborating information on the spot. I find it unreasonable to expect an innocent customer to enter his bank armed with the full details of any transaction in which he has received a check, and I would conclude that Mr. Painter's inability to provide these details to the officers in this case was insufficient to create probable cause for his arrest.

Although I would hold that the officers lacked probable cause, I nevertheless agree with the majority that Mr. Painter's federal claims against the officers were properly dismissed on qualified immunity grounds. An officer is entitled to qualified immunity in a § 1983 action unless the unlawfulness of the officer's conduct was apparent in light of pre-existing law, *see Anderson v.*

-2-

*Creighton*, 483 U.S. 635, 640 (1987), and I agree with the majority that the potential unlawfulness of Mr. Painter's arrest would not have been apparent to a reasonable officer at the time. At the time of Mr. Painter's arrest, several circuit courts had concluded in an analogous line of cases that an officer has probable cause to arrest an individual who presents a counterfeit bill for payment, even if there is no other evidence suggesting an intent to defraud. *See Rodis v. San Francisco*, 558 F.3d 964, 970 (9th Cir. 2009) (collecting cases and holding that police officers were entitled to qualified immunity in a counterfeit bill case based on this precedent). Based on this precedent, I concur with the majority in affirming the dismissal of Mr. Painter's federal claims.

As for Mr. Painter's state law claims against the officers, however, I would hold that the district court erred in dismissing these claims. The district court concluded that the officers were entitled to summary judgment on these claims because they had probable cause for the arrest, *see State v. Johnson*, 930 P.2d 1148, 1153-54 (N.M. 1996), and I disagree with this conclusion. The district court did not consider whether Mr. Painter's state law claims might also be subject to the doctrine of qualified immunity, and this question has not been definitely resolved by New Mexico's courts. *See Romero v. Sanchez*, 895 P.2d 212, 218 (N.M. 1995) ("question[ing] the parties' assumption" that qualified immunity applied to actions brought under New Mexcio's Tort Claims Act, but declining to address this issue because it had not been raised by the parties). Under these

circumstances, I would reverse the district court's entry of summary judgment to the officers on Mr. Painter's state law claims and remand these claims to the district court for either further consideration or remand to the state court.  *See Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.")

I therefore **DISSENT** from the majority's opinion with respect to probable cause and the dismissal of Mr. Painter's state law claims, but I **CONCUR** with respect to the dismissal of Mr. Painter's federal law claims based on qualified immunity.