GORSUCH, Circuit Judge,
concurring in the judgment.
The plaintiff seeks, damages first and foremost because, he says, local law enforcement officials violated his Fourth or maybe his Fourteenth Amendment rights (we’re never told which) by committing the common law tort of malicious prosecution. The defendants accept the premise that the Constitution- somewhere (they too never say where) contains something resembling a malicious prosecution tort. Both sides even .agree that proof of a “favorable termination” is an- essential element of their constitutionalized tort and they disagree only over how favorable that termination must be. The plaintiff argues that a procedural victory should suffice while the defendants contend that any termination must speak more clearly to the plaintiff’s innocence.
Respectfully, I‘ would decline the parties’ invitation to their fight. We are not in the business of expounding a common law of torts. Ours is the job of interpreting the Constitution. And that document isn’t some inkblot on which litigants may project their hopes and dreams Tor a new and perfected tort law, but a carefully drafted text judges are charged with applying according to its original public meaning. If a party wishes to claim , a constitutional right, it is incumbent on him to tell us where it lies, not to assume or stipulate with the other side that it must be in there someplace.
To be sure, the parties are hot the only ones to blame here. The question of malicious prosecution and its place (or not) in the Constitution is “one on which there is an embarrassing diversity of judicial opin *662 ion.” Albright v. Oliver, 510 U.S. 266, 270 n. 4, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion) (internal quotation marks omitted). One -on which this “circuit has not always written consistently.” Taylor v. Meacham, 82 F.3d 1556, 1561 (10th Cir.1996). And one the Supreme Court has only recently agreed to revisit. Manuel v. City of Joliet, 590 Fed.Appx. 641 (7th Cir.2015), cert. granted, — U.S. —, 136 S.Ct. 890, 193 L.Ed.2d 783 (2016). So the fact the parties tiptoe gingerly around the subject is hardly surprising. Indeed, I- respectfully suggest that any effort to enter the arena and,consider the question carefully is likely to leave you looking for the exits.
Consider the alternatives most frequently offered as contenders, the Fourth and Fourteenth Amendments. In Albright, the opinions were various and varied but at least seven- justices of the Supreme Court seemed to agree that the “substantive” component of the.Fourteenth Amendment’s due process clause contains nothing like this tort. See 510 U.S. at 271-75, 114 S.Ct. 807 (plurality opinion); id. at 281-83, 114 S.Ct. 807 (Kennedy, J., concurring in the judgment); id. at 286, 114 S.Ct. 807 (Souter, J., concurring in the judgment). Of course, this much might leave you wondering if the “procedural” component of the due process guarantee remains a potential candidate after Albright. But it’s long since settled that even when a state deprives a person of life, liberty, or property, it does not violate an individual’s procedural due process rights so long as it provides an adequate remedy for the deprivation. See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); Parrott v. Taylor, 451 U.S. 527, 543-44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); Ingraham v. Wright, 430 U.S. 651, 683, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). And there’s no quéstion in our case that state tort law provides adequate remedies to resolve the plaintiffs complaint. Indeed, we know that New Mexico enjoys a rich common law, one that provides- a well-defined tort against the “malicious abuse of process,” We even know that under the terms of New Mexico tort law it’s settled that a plaintiff .doesn’t need to prove any kind of .favorable termination at all. See DeVaney v. Thriftway Mktg. Corp., 124 N.M. 512, 953 P.2d 277, 286 (1997), overruled in part by Durham v. Guest, 145 N.M. 694, 204 P.3d 19 (2009). Given ah this, there’s just no reason to think a plaintiff might possibly be “due” any more process than the State of New Mexico already provides. See Albright, 510 U.S. at 283-85, 114 S.Ct. 807 (Kennedy, J., concurring in the judgment).
That leaves the Fourth Amendment. Here the story is longer but there’s strong reason to suspect it ends the same way. The plurality in Albright expressly left open the possibility that the Fourth Amendment might provide a home for something like a tort of malicious prosecution. 510 U.S. at 275, 114 S.Ct. 807. But the Amendment as originally understood focused on restraining police action before the invocation of judicial processes. See Thomas Y. Davies, Recovering the Original Fourth Amendment, 98 Mich. L.Rev. 547, 609-11 (1999). And textually the relevant language of the Amendment , speaks to “unreasonable searches and seizures.” Meanwhile, the tort of malicious prosecution has traditionally concerned itself not with, police practices—with searches or restraints on physical liberty before the invocation of judicial proceedings—but with the misuse of judicial proceedings. Indeed, many plaintiffs claiming malicious prosecution (including the plaintiff here) seek damages for a defendant’s wrongful use of legal processes even many years after any search or seizure and while the plaintiff remains at liberty awaiting trial. *663 So it’s just pretty hard to':see how you might squeeze anything that looks,,quite like the common law tort of malicious prosecution into the Fourth Amendment. See Lyle Kossis, Note, Malicious Prosecution Claims in Section 1988 Lawsuits, 99 Va. L.Rev. 1635, 1650-52 (2013).
The only apparent way around this problem appears to invite more problems of its own. While the tort of- malicious prosecution focuses on the misuse of judicial proceedings, some have suggested the Fourth Amendment might too because a criminal defendant remains “seized” for Fourth Amendment purposes not just during the pendency of- his arrest -but throughout the life of a criminal prosecution—even while he is at liberty on bond awaiting trial. See, e.g., Albright, 510 U.S. at 277-79, 114 S.Ct. 807 (Ginsburg, J„ concurring). But in light of the Amendment’s history and text, we’ve long conceived of seizures as intentional and effectual restraints on liberty that suffice to lead “a reasonable person ... to- conclude that he is not free to ‘leave.’ ” Michigan v. Chesternut, 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). If we were to amend this understanding at this late date,- so that someone free to leave on bond remains “seized” all the same, what about the defendant awaiting trial on his own recognizance? .Or someone served only with a petty citation or summons to appear at trial? And what about the victim of maliciously employed civil process? Or the witness served with a subpoena compelling his appearance? No less than the bonded defendant, all these persons are subject to a seizure if they fail to appear at trial. Yet we’ve never considered any of them “seized”, simply by virtue of a conditional threat of a seizure. To do so now would seem (again) to require us to cast a' blind eye to the historical (police action) concerns of the Fourth Amendment and the ordinary meaning of its terms. See Kossis, supra, at 1649-52. Indeed, for reasons like these,, several .courts of appeals (this one included) have already rejected. the continuing seizure theory. See, e.g., Becker v. Kroll, 494 F.3d 904, 915-16 (10th Cir.2007) (collecting cases). And I would have thought that enough to resolve this case. For even if we overlook the parties’ failure to identify a constitutional home for their putative cause of action, our own precedent would appear to preclude either of the obvious (Fourth or Fourteenth Amendment) alternatives they might pursue.
You would have to wonder, too, if bending the history and language of the Fourth Amendment in new and procrustean ways to embrace a malicious prosecution tort might invite some unintended, consequences. What would a Fourth Amendment-right look like when expanded to parties-and witnesses at liberty awaiting trial? Might every trial subpoena contest now assume constitutional dimension—and if not, why not? Might expanding the Amendment’s reach at least marginally disincentivize the use of liberty-protecting, pre-trial citation ‘ processes previously thought sufficient to avoid the Amendment’s application? See Martinez v. Carr, 479 F.3d 1292, 1297 (10th Cir.2007). And how might this new undérstanding of the Fourth 'Amendment be squared with existing Supreme Court jurisprudence, which has traditionally treated the post-arraignment, pre-trial detention process as the province of the Fifth and Fourteenth—and not the Fourth—Amendment? See, e.g., United States v. Salerno, 481 U.S. 739, 746-47, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).
. Neither is that the end to the nettles lining the Fourth Amendment path. Anyone wanting to claim a place in the Fourth Amendment for something like a malicious prosecution tort would, of course, have to *664 decide its elements. And that task would surely invite disagreement among the circuits and tension with state law. Indeed, it’s far from obvious that a Fourth-Amend-, ment-based cause of action would wind up looking anything like á common law claim for malicious prosecution, for the tort traditionally has required proof of malice (while the Fourth Amendment has historically. been thought to involve objective “reasonableness” tests) and the institution of legal proceedings (something- the Amendment has never demanded before a violation is found). See generally Kossis, supra, at 1649-50.
These are, as well, hardly the only themes on which we might expect variations and disputes. -Our case offers one more example among what are sure to be many. The defendants contend for a rule requiring the plaintiff to prove not just that a prior criminal action against him was terminated in his-favor, but that it was terminated in a way suggesting his innocence on the merits. The court today adopts that standard and claims to do so as a matter of constitutional imperative.. But no one has directed us to any other circuit to have gone so far as a matter of constitutional law. Meanwhile, many states do not require so much as a matter of common law, holding that terminations won on procedural grounds, like the speedy trial dismissal in this case, suffice. See, e.g., Murphy v. Lynn, 118 F.3d 938, 950 (2d Cir.1997); Rich v. Baldwin, 133 Ill.App.3d 712, 88 Ill.Dec. 748, 479 N.E.2d 361, 363-64 (1985); Gumm v. Heider, 220 Or. 5, 348 P.2d 455, 464-65 (1960). Still other states have concluded that speedy trial dismissals- may be procedural but do reflect the merits—and reflect them in' the plaintiffs favor. See, e.g., Miller v. Watkins, 200 Mont. 455, 653 P.2d. 126, 130 (1982). In fact and as we’ve seen, the very state in which the actions at issue in this case took place (New Mexico) requires no proof of favorable termination at all. And if (as might be hoped) we take seriously the idea that we are expounding the Fourth Amendment’s original public meaning, anyone claiming a malicious prosecution tort can be found in the Amendment might at least want to cast a curious eye to the elements of the cause of action as they existed at the time the Amendment was adopted—yet it’s something no one- has attempted here and something that would not (at least at a glance unaided by any briefing)- seem to support the court’s decision today.*
If all these brambles lining the Fourth Amendment path don’t leave you doubting the wisdom of venturing that way, perhaps they at least leave you wondering about the necessity of the attempt. After all, out of respect for considerations of judicial modesty, efficiency, federalism, and comity, the Supreme Court in procedural due process cases generally encourages federal *665 courts to abstain in favor of state common law remedial processes rather than try to recreate them in the name of the Constitution. And it’s pretty hard to see why we should ignore those same considerations and that same option simply because someone might claim something like the malicious prosecution tort might find a home in the Fourth rather than the Fourteenth . Amendment. Carefully devised, tested, and often pretty ancient state tort law is readily available to address the plaintiffs claimed injury in this case. Neither can it come as a surprise that existing state common law courts will usually supply a sound and sufficient remedy when claims (possibly) .of. constitutional dimension are at stake: the whole point of the common law as it evolved in England and this country through the centuries was to vindicate the rights thought fundamental to thé enjoyment of life, liberty, and property. Before barreling down the constitutional road, why not at least pause to consider the possibility of abstaining in favor of common law proceedings? Asking first: is there really a need to decide any matter of constitutional gravity or might the common law already supply whatever remedy the parties seek to project onto the Constitution? To be sure, Parrott abstention doctrine is often said to have originated in the procedural due process setting (though there’s good reason to question that account, see Browder v. City of Albuquerque, 787 F.3d 1076, 1085 (10th Cir.2015) (Gorsuch, J., concurring)). But even accepting the premise I cannot think of a good reason why the doctrine should be limited to that or any particular class of cases—why abstention should turn on the question which amendment the plaintiff might happen to invoke (or hope we might invoke) as the source of his right rather than on the question whether state law is adequate to vindicate the injury he alleges—as it indisputably is here. See generally Albright, 510 U.S. at 283-86, 114 S.Ct. 807 (Kennedy, J., concurring in the judgment); Browder, 787 F.3d at 1084-85 (Gorsuch, J., concurring); Williamson Cty. Reg’l Planning Comm’n v. Hamilton Bank, 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); Newsome v. McCabe, 256 F.3d 747, 750-51 (7th Cir.2001); Schaper v. City of Huntsville, 813 F.2d 709, 718 (5th Cir.1987); Mann v. City of Tucson, Dep’t of Police, 782 F.2d 790, 797-98 (9th Cir.1986) (Sneed, J., concurring in the result).
The objections to abstention are familiar but unpersuasive. Some have argued that § 1983 authorizes federal courts to remedy constitutional injuries so federal courts must decide any claim brought under its auspices. See, e.g., Albright, 510 U.S. at 315-16, 114 S.Ct. 807 (Stevens, J., dissenting). Some have ‘also seemed to suggest that state courts cannot'be trusted to apply their own common law fairly to their own citizens in suits against state officials. See Kossis, supra, at 1661 & n. 161. But, respectfully, it’s long since settled that the statutory power to proceed does not always entail the duty to do so, for federal courts not infrequently abstain when they have the power to decide. See, e.g., Younger v. Harris, 401 U.S. 37, 43-44, 91 S.Ct. 746, 756, 760, 27 L.Ed.2d 669 (1971); Parratt, 451 U.S. at 540-44, 101 S.Ct. 1908; Browder, 787 F.3d at 1083-84 (Gorsuch, J., concurring). And even if there may be some circumstances when federal courts have to act because state courts are unable or unwilling to intervene, no one suggests anything like that in this case or in the mine run of cases like it. To the contrary, every indication in this case is .that the plaintiff would have fared much better under state tort law than he does under our constitutionalized facsimile of state tort law—and it is surely at least a little ironic that in the name of protecting individual *666 rights we not infrequently wind'up in cases like this one effectively diminishing them. See Albright, 510 U.S. at 285-86, 114 S.Ct. 807 (Kennedy, J., concurring in the judgment); Browder, 787 F.3d at 1084 (Gorsuch, J., concurring).
In the end', all the'difficulties and doubts associated with finding a home for a tort of malicious prosecution in the Constitution confirm for me the obvious: that “some questions of ... tort law are best resolved by” tort law. Albright, 510 U.S. at 284, 114 S.Ct. 807 (Kennedy, J., concurring in the judgment). When the parties cannot be bothered to identify the source of their supposedly constitutional .complaint,- when the avenues to a constitutional, home are lined with doubt, and when there’s a perfectly free and clear common law route available to remedy any wrong alleged in this case, I just do not see the case for entering a fight over .an element of a putative constitutional cause of action that may not exist and no one before us needs. Often judges judge best when they judge least—and, respectfully, I believe this is such a case.

 From what I can tell after a brief and lonely look, the "indicative of innocence” gloss proffered by the defendant is just that, a possibility alluded to by some common law courts and appearing in a comment to the Restatement of Torts—but not a requirement appearing in the Restatement's actual text and not a firm and settled requirement in anything- like all common law jurisdictions at the time of .the Amendment's adoption—let alone now. See Martin L. Newell, A Treatise on the Law of Malicious Prosecution and the Abuse of the Legal Process 327 (1892) ("[J]ust what is a legal termination of the prosecution and sufficient to maintain the action: ... does not appear to have been so completely settled.”); see also Clark v. Cleveland, 6 Hill 344, 345-47 (N.Y.Sup.Ct.1844). Neither is the necessity of this gloss entirely apparent if the plaintiff already has to prove (as he does under most every articulation of the tort’s common law elements) that the criminal proceedings against him were the product of malice and instituted without probable cause. See New-ell, supra, at 343 (discussing the cornmon law’s "better and more equitable rule”).